[Civ. No. 24528.   Second Dist., Div. Three.   Dec. 2, 1960.]

BESSIE MOCK, Appellant, v. SANTA MONICA HOS-
PITAL et al., Defendants; E. LOOPESKO, M. D., et al.,
Respondents.

58

William J. MacCabe for Appellant.

Overton, Lyman & Prince and Ried Bridges for Respondents.

FORD, J.—This is an appeal by the plaintiff from a judgment of dismissal in favor of defendants Loopesko and Smith entered after their demurrer to the fifth amended complaint had been sustained without leave to amend. While the demurrer of the defendant hospital was also sustained without leave to amend, the record discloses no judgment in favor of that defendant.

The action was one for damages arising from alleged malpractice on the part of the respondents. The demurrer was sustained on the ground that the cause of action alleged was barred by the statute of limitations. (Code Civ. Proc., § 340, subd. 3.) The correctness of that determination is the sole question presented on this appeal. Accordingly, we must examine the pleading of the plaintiff in the light of the rule that a demurrer admits the truth of all allegations which are well pleaded. (*Lee* v. *Hensley,* 103 Cal.App.2d 697, 704 [230 P.2d 159]; *Hitson* v. *Dwyer,* 61 Cal.App.2d 803, 807 [143 P.2d 952].) The original complaint was filed on April 17, 1958.

Pertinent allegations found in the fifth amended complaint, which was verified, are as follows: 1. Defendants Loopesko and Smith were duly licensed physicians and surgeons. 2. They were employed by the plaintiff to perform a surgical operation on the lumbosacral region of her back.[1] 3. They negligently performed the operation. 4. By reason thereof, the plaintiff sustained injury to her arms, shoulders and upper back, which injury was proximately caused by the negligence of the defendants. 5. The plaintiff secured the services of the defendants "in connection with an injury plaintiff sustained during the course of her employment as a saleslady for a department store and more particularly, while lifting a heavy roll of plastic from a metal bin; and that subsequent to the aforesaid operation plaintiff believed that said injuries to her arms,

---

[1]While the fifth amended complaint alleges that the date of employment was "on or about February 26, 1954," this is admitted by the appellant to be an error. As appears from prior complaints in the case, the operation was performed on June 15, 1954.

shoulder and back were solely and directly a proximate and direct result, and continuing result, of said prior injury sustained during the course of her employment and not related to nor connected with any negligence or carelessness on the part of the aforesaid defendants during said operation; that plaintiff, subsequent to said operation, was not informed and had no reason to believe that her pain and suffering and her aforesaid injuries to her upper extremities were a direct and proximate result of the aforesaid negligence of defendants during said operation until September 30, 1957, at which time plaintiff was informed by John R. Black, M.D., that her aforesaid injuries were in some manner directly and solely connected with the aforesaid operation upon plaintiff and not connected with or related to the prior injury plaintiff sustained during the course of her employment.''

In the determination of whether the plaintiff's cause of action is barred by the statute of limitations, the amended complaint is treated as though it had been filed on the date of the original complaint. (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 717-718 [128 P.2d 522, 141 A.L.R. 1358].) Moreover, as stated in the Wennerholm case, at page 716: ''If any verified pleading contains an allegation which renders a complaint vulnerable, the defect cannot be cured simply by omitting the allegation, without explanation, in a later pleading.'' In *Owens* v. *Traverso,* 125 Cal.App.2d 803, the applicable law is stated as follows, at page 804 [271 P.2d 164]: ''. . . although prior complaints are normally superseded by subsequent ones, and should be disregarded, a pleader cannot cure a defect in a verified complaint by simply, without legal explanation, omitting such allegations from subsequently filed pleadings. In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.'' (See also *Regus* v. *Schartkoff,* 156 Cal.App.2d 382, 391-392 [319 P.2d 721].) In the light of such authorities, we turn to an examination of the earlier verified complaints.

In the original complaint it is alleged as follows: ''As a result of Plaintiff's injuries during her employment, she instituted an action before the Industrial Accident Commission, which action demanded and received prolonged hearings up until June of 1957. It was only *during* said hearings, and particularly after the submission of reports from examining physicians in said hearings, that Plaintiff discovered that her injuries, and particularly the injury to her shoulder, was the

direct and proximate result of the negligence and malpractice of the Defendants herein alleged.'' (Emphasis added.)

The language of the first amended complaint is not entirely consistent with the allegation just quoted that it was ''only during said hearings, and particularly after the submission of reports from examining physicians in said hearings,'' that the plaintiff discovered that her injury to her shoulder was due to the negligence of the defendants. In the first amended complaint the plaintiff makes the following allegations: ''Plaintiff instituted an action before the Industrial Accident Commission which action demanded and received numerous and prolonged hearings and re-hearings up until June of 1957. Until the conclusion of said hearings and the submission of numerous medical reports which were a result of numerous physical examinations ordered by the Commission, Plaintiff was neither aware nor could she reasonably have known with the exercise of reasonable diligence and inquiry the cause or causes of her injury and especially the cause or causes of her continued pain and discomfort in her back and particularly her shoulder. The reason for said hearings was to determine and adjudicate the causes for said injuries and pain. It was only *after* said hearings and within one (1) year from refiling of this Complaint that Plaintiff learned from the medical reports submitted before the Commission and from subsequent physical examinations that her injuries, pain and discomfort and particularly the injury to her shoulder was the direct and proximate result of the negligence and malpractice of the Defendants herein alleged.'' (Emphasis added.) No explanation was offered with respect to such inconsistency.

Portions of the second amended complaint appear to be inconsistent with allegations of the original complaint and other portions appear to be inconsistent with allegations of the first amended complaint. Since such portions are of importance in the determination of this appeal, it is necessary to quote them at length. Two portions are: ''On January 20, 1956, John R. Black, M. D. was appointed by the Industrial Accident Commission to examine the Plaintiff in connection with her shoulder and upper back injury and for the first time in his medical report filed before the Commission and on record therein was there an indication that the upper back and shoulder injury was not caused by the Plaintiff's original fall but, instead, was caused by the method and procedure of the surgery performed upon the Plaintiff by the Defendants. On March 23, 1956, the Industrial Accident Commission or-

dered a hearing for the cross-examination of Dr. Black for the purpose of submitting rebuttal evidence to the cause of her upper back and shoulder injury and in connection therewith, the Commission ordered further examination of the Plaintiff for the purpose of determining the cause of her shoulder and upper back injury. On March 23, 1956, the Industrial Accident Commission made an Order granting the Petition for Reconsideration again for the purpose of determining the cause for the upper back and shoulder injury. On April 12, 1956, the Commission made another Order for Reconsideration of the cause of Plaintiff's injury and for further examination. On April 9, 1957, the Industrial Accident Commission made another Order for further hearing to determine the cause and extent of Plaintiff's shoulder and upper back injury. On May 20, 1957, John R. Black, M. D. submitted a report on file therein *again* indicating that Plaintiff's shoulder and upper back injury was not a result of her original trauma but a result of the method and procedure of operation. . . . Plaintiff further alleges that she could not determine whether she had a cause of action because the issue of what caused her presnt complaint was being determined by the Industrial Accident Commission and by the numerous physicians and surgeons appointed by the Commission to examine her and that before she could become aware of her cause of action, it was necessary for the Industrial Accident Commission and the numerous doctors appointed by said Commission to determine the cause of her injury, and for the further reason that Plaintiff sustained said injury while she was completely under the influence of general anaesthesia during surgery. . . .'' (Emphasis added.) A third portion is in the language which is quoted hereinabove from the first amended complaint. No explanation of any inconsistency was offered.

In the third amended complaint, the plaintiff alleges that the defendants examined and treated plaintiff on many occasions subsequent to her surgery and filed numerous reports of their examinations and findings with the Industrial Accident Commission, all of which reports contained the conclusion that her failure to recover and her symptoms were in no way connected with the surgery. She further alleges that her employer and its insurance carrier requested numerous rehearings before the commission ''predicated on the contention that Plaintiff's complaints and injuries subsequent to surgery were not the proximate result of and not connected with her injury'' and that ''[o]n each such occasion of said hearings, the Com-

mission ruled that Plaintiff's injuries and pain in the upper extremities were a result of her original injury and ordered further treatment and examination.'' The final paragraph of the third amended complaint, obviously of an evidentiary nature, is: "Plaintiff refers to her Industrial Accident case, Claim No. 54 L. A. 153-838 entitled 'BESSIE MOCK vs. J. J. NEWBERRY COMPANY, a corporation; LIBERTY MUTUAL INSURANCE COMPANY, a corporation' and incorporates the entire file of said case including all of the reports, minutes and orders contained therein and will ask leave of Court at the time of trial to present said file into evidence in proof of Plaintiff's cause.''

While an affidavit of counsel for the plaintiff was filed in opposition to the demurrer to the third amended complaint, it explains none of the inconsistencies found in the examination of the several complaints except that the affiant does quote from the report of January 24, 1956, of Dr. Black as follows: "'As far as the shoulder condition is concerned, there is nothing in the history to indicate that the patient sustained any injury to her shoulder, however, it does happen that with the patient lying face down on an operating table, shoulders and arms are abducted and this sometimes gives rise to a so-called frozen shoulder syndrome. The medical probabilities are that the patient's present complaints in her shoulder came on subsequent to surgery and are related to the operation and consequently are an industrial disability.' ''[2] It is to be noted that, in his affidavit, counsel for the plaintiff states that Dr. Black's report, ''represents the first subtle indication to this Plaintiff of her present cause of action.'' But he further states that ''[t]here is nothing in this report to give rise to any suspicion of malpractice.''

The fourth amended complaint and the fifth amended complaint are identical. Insofar as the affidavit, to which reference has been made, may be used as an attempted explanation of the allegations of the fourth and fifth amended complaints with respect to information received from Dr. Black, we find a reference to September 30, 1957, as the date of the hearing ''for cross-examination of Dr. Black in order to determine the cause of the shoulder injury.''

An action by a patient against a physician and sur-

---

[2]Hereinafter in this opinion, reference is made to the law with respect to a new injury, received in the course of treatment of an industrial injury, as the subject of compensation in the proceedings before the Industrial Accident Commission.

geon for injuries sustained by the patient by reason of negligent treatment is an action sounding in tort and not upon a contract. The statute of limitations of one year embodied in subdivision 3 of section 340 of the Code of Civil Procedure governs such an action. (*Stafford* v. *Shultz,* 42 Cal.2d 767, 775 [270 P.2d 1] ; *Huysman* v. *Kirsch,* 6 Cal.2d 302, 306 [57 P.2d 908] ; *Calvin* v. *Thayer,* 150 Cal.App.2d 610, 616 [310 P.2d 59] ; *Costa* v. *Regents of University of California,* 116 Cal.App.2d 445, 454 [254 P.2d 85] ; *Ehlen* v. *Burrows,* 51 Cal. App.2d 141, 144 [124 P.2d 82].) However, the statute of limitations does not commence to run until the plaintiff discovers his injury or through the exercise of reasonable diligence should have discovered it. (*Stafford* v. *Schultz, supra,* 42 Cal.2d 767, 776 ; *Hurlimann* v. *Bank of America,* 141 Cal. App.2d 801, 802-803 [297 P.2d 682] ; *Hemingway* v. *Waxler,* 128 Cal.App.2d 68, 70-71 [274 P.2d 699] ; *Greninger* v. *Fischer,* 81 Cal.App.2d 549, 553 [184 P.2d 694].) As stated by Mr. Justice White in *Trombley* v. *Kolts,* 29 Cal.App.2d 699, at page 709 [85 P.2d 541] : ''Certainly the statute of limitations should not run against appellant's rights during the time she was in ignorance of the cause of her disability, and could not with reasonable care and diligence ascertain such cause. . . .'' More recently, in *Hundley* v. *St. Francis Hospital,* 161 Cal.App.2d 800, it was said, at page 806 [327 P.2d 131] : ''Thus, in the absence of actual discovery of the negligence, the statute does not commence to run during such period (*Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908]), and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered (*Trombley* v. *Kolts,* 29 Cal.App.2d 699 [85 P.2d 541]).'' (See also *Myers* v. *Stevenson,* 125 Cal.App.2d 399, 402 [270 P.2d 885].)

Moreover, the statute of limitations with respect to a cause of action for malpractice does not ordinarily commence to run while the physician-patient relationship continues between the defendant physician and the plaintiff. (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399, 401), unless the plaintiff has in fact discovered the injury or through the use of reasonable diligence should have discovered it. (See *Petrucci* v. *Heidenreich,* 43 Cal.App.2d 561, 562 [111 P.2d 421] ; *Hundley* v. *St. Francis Hospital, supra,* 161 Cal.App.2d 800, 806.)

In order to show that his cause of action is not barred where the act of the defendant which is alleged to have been negligent occurred more than a year before the commencement of the action, the plaintiff must state in his complaint ''when

the discovery was made, the circumstances under which it was made, and facts to show that the plaintiff is not at fault for not having made an earlier discovery, and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399; *Wohlgemuth* v. *Meyer, supra,* 139 Cal.App.2d 326, 330-331 [293 P.2d 816].)'' (*Hurlimann* v. *Bank of America, supra,* 141 Cal.App.2d 801, at 803.)

In the light of the applicable law, we turn again to the allegations of the plaintiff in her second and fifth amended complaints. In the former pleading, the plaintiff alleged that on January 20, 1956, Dr. Black was appointed by the Industrial Accident Commission to examine her "in connection with her shoulder and upper back injury and for the first time in his medical report filed before the Commission and on record therein was there *an indication that the upper back and shoulder injury was not caused by the Plaintiff's original fall but, instead, was caused by the method and procedure of the surgery performed upon the Plaintiff by the Defendants.''* (Emphasis added.) We must conclude that the contents of such report, the date of which is given as January 24, 1956, in the affidavit of the plaintiff's counsel heretofore noted, was known to the plaintiff or her attorney prior to or about March 23, 1956, because it is further alleged that on the latter date "the Industrial Accident Commission ordered a hearing for the cross-examination of Dr. Black for the purpose of submitting rebuttal evidence to the cause of her upper back and shoulder injury and in connection therewith, the Commission ordered further examinations of the Plaintiff for the purpose of determining the cause'' of that injury. It appears, therefore, that the pleading of the plaintiff in the fifth amended complaint as to the acquisition of information with respect to the relationship between that injury and the operation is in essence the same as in the second amended complaint *except for the date thereof,* as is evident from the following excerpt, heretofore noted, from the fifth amended complaint: ". . . that plaintiff, subsequent to said operation, was not informed and had no reason to believe that her pain and suffering and her aforesaid injuries to her upper extremities were a direct and proximate result of the aforesaid negligence of defendants during said *operation until September 30, 1957, at which time plaintiff was informed by John R. Black, M. D., that her aforesaid injuries were in some manner directly and solely connected*

*with the aforesaid operation upon plaintiff and not connected with or related to the prior injury plaintiff sustained during the course of her employment."* (Emphasis added.) No satisfactory explanation has been offered for the inconsistencies apparent in the various allegations of the plaintiff. Therefore, in passing upon the merits of the demurrer to the fifth amended complaint, the court below was warranted in determining that for more than one year prior to the filing of her action the plaintiff had information indicating that her shoulder and upper back injury had its origin in the operation and not in the accident she suffered at her place of employment.

A question still remains to be answered. We must determine whether the plaintiff's information with respect to the origin of her injury of which she complains in this action was sufficient to put her on inquiry as to the existence of negligence on the part of the defendants. In her first as well as in her last complaint she alleges that her injury is permanent and that she was caused to suffer and continues to suffer severe pain. Certainly, a prudent person would believe that if, in the course of an operation at one point on the body, a serious and painful injury occurred to another part of the body, there was cause for an investigation for the purpose of determining whether there was fault on the part of the surgeons and their assistants. As stated in *Bathke* v. *Rahn*, 46 Cal.App.2d 694, at page 696 [116 P.2d 640] : "This brings into play the rule so frequently announced in this state that 'as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts.' (*Lady Washington Consolidated Co.* v. *Wood*, 113 Cal. 482 [45 P. 809].)" (See also *Hemingway* v. *Waxler, supra,* 128 Cal.App.2d 68, 71; *Ehlen* v. *Burrows, supra,* 51 Cal.App.2d 141, 145.)[3] No sufficient excuse or explanation for the plaintiff's failure to pursue a reasonable inquiry has been offered in her pleadings.

The pendency of the proceeding before the Industrial

---

[3]Codification of the rule is found in section 19 of the Civil Code: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (See also *Crabbe* v. *White,* 113 Cal. App.2d 356, 359-360 [248 P.2d 193].)

Accident Commission did not suspend the operation of the statute of limitations. While the infliction of a new injury resulting from the treatment of an industrial injury is compensable under the provisions of the Workmen's Compensation Act, the injured employee is not precluded thereby from bringing an action against the attending physician for negligence or malpractice. (*Fitzpatrick* v. *Fidelity & Casualty Co.,* 7 Cal. 2d 230, 233-234 [60 P.2d 276] ; *Smith* v. *Coleman,*[4] 46 Cal.App. 2d 507, 513 [116 P.2d 133] ; see *Duprey* v. *Shane,* 39 Cal.2d 781, 789 [249 P.2d 8].) The issues in the proceeding before the commission, including those relating to the items for which recovery may be had, are different from the issues involved in the action to recover damages for malpractice. (*Duprey* v. *Shane, supra,* 39 Cal.2d 781, 794.) There is nothing in the law which prevents an injured employee from pursuing both of his remedies at the same time. (*Cf. Heaton* v. *Kerlan,* 27 Cal.2d 716 [166 P.2d 857].)

▆▆▆ Six verified complaints have been filed by the plaintiff. She has failed to overcome the obstacle of the statute of limitations. Under such circumstances, since the number of amended complaints which it was reasonable to permit her to file could not be unlimited, there was no abuse of discretion in sustaining without leave to amend the demurrer to the fifth amended complaint. (See *Johnson* v. *Ehrgott,* 1 Cal.2d 136, 138 [34 P.2d 144].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

---

[4]The applicable law is succinctly stated in *Smith* v. *Coleman,* at page 513 [116 P.2d 133], as follows: "Where recovery is sought by an employee *against his employer or the employer's insurance carrier* for a new or aggravated injury resulting from the negligence of a physician in treating an industrial injury, the Industrial Accident Commission has exclusive jurisdiction to determine the claim. (*Fitzpatrick* v. *Fidelity & Casualty Co. of N. Y.,* 7 Cal.2d 230 [60 P.2d 276]; *Nelson* v. *Associated Indemnity Corp.,* 19 Cal.App.2d 564 [66 P.2d 184].) But where, as in the instant case, recovery for the new or aggravated injury which resulted from the negligence of the physicians who treated plaintiff's industrial injury is sought against the physicians only, and neither the employer nor the latter's insurance carrier is a party, plaintiff may recover in an ordinary civil action for malpractice."