[Civ. No. 21181. First Dist., Div. One. Jan. 22, 1964.]

ALEXANDER WEINSTOCK, Plaintiff and Appellant, v. ROLF EISSLER et al., Defendants and Respondents.

Edises, Grossman & Grogan and Aubrey Grossman for Plaintiff and Appellant.

Peart, Baraty & Hassard, Pelton, Gunther, Durney & Gudmundson, Clark, Heafey & Martin, Rankin & Anderson, Richard G. Logan, Robert D. Huber and Charles Goff for Defendants and Respondents.

SULLIVAN, J.—Plaintiff appeals from a judgment dismissing his third amended complaint after the court sus-

tained general demurrers thereto with leave to amend and plaintiff failed to amend. Plaintiff also "appeals from the minute order herein dated September 5, 1962, . . ."[1] ■ An order sustaining a demurrer with or without leave to amend is nonappealable and the appeal must be taken from the ensuing judgment. (*Carley* v. *City of Santa Rosa* (1957) 154 Cal.App.2d 214, 215 [315 P.2d 905]; see also *Evans* v. *Dabney* (1951) 37 Cal.2d 758, 759 [235 P.2d 604]; 3 Witkin, Cal. Procedure, p. 2162.) The attempted appeal from the above minute order must be dismissed. We review the proceedings below on the appeal from the judgment.

The third amended complaint (hereafter for convenience referred to as "complaint") names as defendants Doctors Rolf Eissler, Gordon Cless, Harold A. Hill, Glen Cross, Walter Kollman and St. Joseph's Hospital as well as two additional defendants sued by fictitious names (Fourth Doe and Fifth Doe).[2] It contains ten counts.

*Counts against Dr. Cross (First, Second and Third Counts)*

The first, second and third counts set forth causes of action against defendant Cross. The *first count,* purporting to state a cause of action for malpractice alleges in substance as follows: During the month of February 1960 Cross negligently diagnosed, cared for and treated plaintiff. On February 23, 1960, he performed a cerebral angiogram and a spinal tap on plaintiff at St. Joseph's Hospital. In order to conceal from plaintiff (a) the negligence with which the cerebral angiogram and spinal tap were performed and (b) the fact that a spinal tap was performed, Cross failed to enter or have entered in the hospital record any facts concerning the performance of these operations or even the fact that they had been done. Cross never advised plaintiff either that he intended to do, or that he had done, a spinal tap on him on the above date and plaintiff did not learn that Cross had done the spinal tap until he acquired such information through the

---

[1]The only minute order dated September 5, 1962, disclosed by the record recites that the general demurrer of St. Joseph's Hospital is sustained with 10 days to amend. We find no minute orders covering the demurrers of the remaining five defendants although, as we point out *infra,* the court's judgment covers all six demurring defendants. (See footnote 12, *infra.*)

[2]The original complaint filed April 24, 1961, named Doctors Cross and Kollman, the hospital and five defendants by fictitious names. Subsequently Doctors Eissler, Cless and Hill were served as First, Second and Third Does respectively and thereafter appeared in the action.

deposition of defendant Cless, an anesthesiologist, on November 27, 1961.

As a result of the negligent diagnosis, care and treatment of plaintiff by Cross, plaintiff suffered and will suffer brain damage with resulting partial paralysis, loss of speaking ability, mental anguish and loss of earnings and earning power all to his damage in the sum of $250,000.

During the months of February and March 1960 Cross assured plaintiff that the latter's above condition would substantially improve over a period of time but there was no substantial improvement by April of 1961. Plaintiff believed Cross' assurances and that the period between February 1960 and April 1961 was a reasonable one within which to wait in order to determine whether there was going to be substantial improvement and hence saw no reason to file suit prior to April 1961. After plaintiff developed the partial paralysis on February 23, 1960, Cross stated to him that there was no relationship between any procedure performed by Cross and said paralysis, which statement was false, known by Cross to be so, and made for the purpose of precluding the commencement by plaintiff of an action for malpractice.

Plaintiff did not learn of the falsity of said statement on causation until approximately April 1, 1961, when the discovery was made by his present counsel who were consulted by plaintiff ''as to whether he had a cause of action against anyone, ... Plaintiff could not reasonable [*sic*] have discovered it earlier because of the extremely technical medical questions involved.''

It is also alleged in the first count that '' [p]laintiff, as a result of the tortious acts of defendants, as set out in this complaint was, continuously from February 23, 1960 to the end of April 1960, insane.''

It is further alleged on information and belief that Cross ''was absent from the state for two months between April 23, 1960, and the date of filing of this complaint.''

It is further alleged (and incorporated by reference in the second and third counts) that defendant Doctor Kollman treated plaintiff continuously from February 23, 1960, to October 20, 1960.

The *second count,* purporting to set forth a cause of action based on the commission of a battery, incorporates by reference all allegations of the first count except those contained

in a specified paragraph[3] alleging negligence and resulting damages and in addition alleges in substance as follows: During February 1960 Cross proposed to plaintiff the doing of a cerebral angiogram, advising that it was necessary, safe and simple. However, in making the proposal he failed to advise plaintiff (a) of the hazards involved; (b) of the existence of other diagnostic procedures involving no hazard which might have made the angiogram unnecessary; (c) that the likelihood of a condition requiring a cerebral angiogram for diagnosis was very slight; and (d) that a cerebral angiogram at a hospital other than St. Joseph's would have been much less hazardous because of the antiquated equipment at St. Joseph's.

During February 1960 plaintiff consented to the performance on him of a cerebral angiogram but would not have done so, had not Cross improperly advised him as stated above. Plaintiff never at any time consented to the spinal tap which was performed on him on February 23, 1960.

Cross performed the cerebral angiogram and spinal tap on plaintiff at St. Joseph's Hospital on Feberuary 23, 1960, and "[i]n doing so he acted with oppression, fraud, and malice." It is alleged that for the purpose of concealment (as alleged in the first count) Cross failed to enter any information about the operation in the hospital records.[4] It is further alleged as in the first count (which allegations are also incorporated by reference with consequent redundance—see footnote 4, *ante*) that plaintiff did not learn of Cross' improper advice until he consulted his counsel in April 1961.[5]

As a proximate result of the *batteries* alleged, plaintiff suffered injuries as alleged in the first count to his damage in the sum of $250,000. "Proper exemplary damages are $125,000."[6]

---

[3]This is paragraph V of the first count which alleges that during February 1960 Cross negligently diagnosed, cared for and treated plaintiff as a result of which plaintiff suffered certain injuries and damage in the sum of $250,000.

[4]Except for the additional allegations relating to defendant Cross' oppression, fraud and malice, these allegations are identical with those of the first count, which plaintiff incorporates by reference. Plaintiff has not availed himself of the economies of his wholesale repleading by reference.

[5]In the comparable paragraph in the first count, the allegations related to the falseness of Cross' statement on causation. Otherwise the allegations in both counts are the same.

[6]Except for alleging the proximate result of *batteries* rather than *negligence* and for the addition of exemplary damages, these damage

The *third count,* purporting to set forth a cause of action for deceit, incorporates by reference all allegations of the first count except those alleging negligence and resulting damage therefrom (see footnote 3, *ante*) and in addition alleges in substance as follows: During the month of February 1960, Cross proposed to plaintiff that he should permit a cerebral angiogram to be performed on him. In order to secure plaintiff's approval Cross represented that (a) said test was usually routine and harmless, (b) no condition present in plaintiff's case would make the test other than routine and harmless, (c) there was no other test which was harmless and which might make the doing of a cerebral angiogram unnecessary and (d) said test was required to discover the cause of a certain abnormality in plaintiff's eyes and vision.

Said representations were false. Cross knew they were false or had no reasonable ground to believe them to be true, and made them with the intention of convincing plaintiff they were true and causing him to agree to the doing of the angiogram. Plaintiff believed them to be true and in reliance thereon consented to the angiogram.

The remainder of the third count repeats in substantially the same language allegations (found in the first two counts) relating to the performance of the cerebral angiogram, the resulting injury and damage and the discovery of the falsity of the representations about April 1, 1961, upon consultation with counsel. Compensatory damages of $250,000 and exemplary damages of $125,000 are sought.

*Counts against Dr. Kollman (Fourth, Fifth and Sixth Counts)*

It would serve no useful purpose to set forth the allegations of these three counts in detail. Suffice it to say that they are virtual repetitions of the first, second and third counts, respectively, but with defendant Dr. Kollman substituted therein for defendant Cross. This is accomplished by incorporating by reference a number of paragraphs in the preceding corresponding count and repeating, in language made applicable to Kollman but otherwise identical, certain allegations theretofore made applicable to Cross.[7]

---

allegations are the same as those found in a comparable paragraph of the first count.

[7]By way of illustration, the allegations of paragraphs V and VI of the first count relating to negligent diagnosis, care and treatment, resulting damage and the doctor's assurances of improvement are repeated as paragraphs III and IV of the fourth count, except that the name

However the following must be noted: Since almost all paragraphs of the first count are incorporated by reference in the fourth, fifth and sixth counts, it is therefore alleged in such last three counts that Cross performed the angiogram and spinal tap, attempted to conceal what he did, and failed to advise plaintiff that he had done a spinal tap. The insane condition of plaintiff as a result of the tortious acts of defendants is repleaded by reference.

It is also alleged on information and belief in the fourth (negligence) count and sixth (fraud) count but not in the fifth (battery) count that defendant Kollman was absent from the state for two months between April 23, 1960, and the date of filing the original complaint (April 24, 1961).

It is also important to note that in the *fifth* count but *not* in the *fourth* or *sixth* counts it is alleged that in performing the cerebral angiogram and spinal tap on plaintiff on February 23, 1960, Cross "acted as the agent of Kollman."

*Counts against Doctors Eissler, Cless and Hill (Seventh, Eighth and Ninth Counts)*

*Each* of *these three counts* incorporates by reference the allegations of the first count (against Cross) relating to Kollman's period of treating plaintiff (paragraph 1-A); plaintiff's insane condition (paragraph III); Cross' assurances to plaintiff that his condition would improve (paragraph VI); Cross' failure to advise plaintiff about the spinal tap (paragraph VIII); Cross' false statements on causal relationship (paragraph IX); and plaintiff's discovery of their falsity (paragraph X).[8]

Each of these three counts thereupon alleges upon information and belief that the respective doctor[9] therein involved was absent from the state for two months between April 23, 1960, and the date of filing the complaint (i.e., April 24, 1961). Each thereafter alleges (in language identical to that used against Cross in the first count) that such doctor "negligently diagnosed, cared for, and treated plaintiff" as a

Kollman is substituted for the name Cross. In the same way, paragraph IX of the first count relating to false statements as to absence of causation is repeated as paragraph VI of the fourth count without change except for the doctor's name.

[8]Since we have set forth these allegations in substance in our discussion of the first count, *supra*, it is unnecessary to do so again.

[9]I.e., Dr. Eissler in the seventh count, Dr. Cless in the eighth count and Dr. Hill in the ninth count.

result of which plaintiff suffered certain injuries to his damage in the sum of $250,000.

*Count against St. Joseph's Hospital (Tenth Count)*

The *tenth count* against St. Joseph's Hospital, hereafter called the hospital, incorporates by reference all allegations of the first count (against Cross) except those relating to Cross' absence from the state (paragraph IV) and those relating to Cross' negligence and the damage resulting therefrom (paragraph V—see footnote 3, *ante*) and also incorporates the allegations of the eighth and ninth counts relating to the negligence of defendants Cless and Hill, respectively. (Paragraph III of each of said counts.)

In addition the tenth count alleges in substance as follows: The negligence of defendants Cless and Hill "was performed during the time that each was acting as agent, actual and ostensible" of the hospital and within the course and scope of said agency. After the performance of the cerebral angiogram and spinal tap on plaintiff on February 23, 1960, the hospital "to conceal the negligence of its agents from plaintiff" failed to keep records concerning such operation. The hospital was "negligent in connection with the doing of the cerebral angiogram in the fact that its X-ray equipment was antiquated." The equipment could not take rapid follow-up films as a result of which a greater amount of fluid had to be injected into plaintiff in doing the angiogram. The hospital was negligent in obtaining surgical consents from plaintiff in that it did not advise him of the procedures to which he was agreeing by signing the consent and it did advise him that the signing of the consent was a routine procedure.

It was also alleged that "[i]n securing plaintiff's signature to the consents Hospital was acting as agent for Glen Cross and Walter Kollman. Thereby Hospital committed batteries on plaintiff. In this connection the Second Count and the Fifth Count are incorporated herein."

All defendants filed general demurrers to the foregoing complaint asserting that said complaint and each count thereof failed to state facts sufficient to constitute a cause of action and further that each disclosed on its face that said action was barred by the provisions of Code of Civil Procedure section 340, subdivision 3.[10] In addition, defendants

---

[10]Code Civ. Proc., § 340, subd. 3, in relevant part prescribes the following applicable period of limitation: "Within one year: ... 3. An action for ... battery .... or for injury to or for the death of one caused by the wrongful act or neglect of another, ..."

Kollman, Eissler, Cless and Hill also filed special demurrers asserting that the complaint was ambiguous, uncertain and unintelligible in various particulars.[11]

The general demurrers of all six defendants were sustained with 10 days' leave to amend.[12] Plaintiff declined to do so.

Plaintiff contends here that: (1) It cannot be stated as a matter of law from the face of the third amended complaint that the statute of limitations commenced to run more than one year before the filing of the original complaint on the theory of discovery; (2) the insanity of plaintiff tolled the statute of limitations; and (3) the absence of defendants from the state tolled the statute of limitations.

We first dispose of a preliminary matter and at the same time define the scope of our review of the trial court's order. Where an order sustaining a demurrer to a complaint with leave to amend is *general in its terms* without specifying the ground of the court's ruling and the pleader elects not to amend, the order will not be disturbed on appeal and the ensuing judgment of dismissal must be affirmed, if the complaint is objectionable on any ground raised by the demurrer. (*California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 623 [7 P.2d 297]; *Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 424 [282 P.2d 890]; *Metzenbaum* v. *Metzenbaum* (1948) 86 Cal.App.2d 750, 752 [195 P.2d 492]; *Totten* v. *Underwriters at Lloyd's London* (1959) 176 Cal.App.2d 440, 442 [1 Cal.Rptr. 520]; *Brumfield* v. *Crocker-Anglo Nat. Bank* (1960) 185 Cal.App.2d 759, 760. [8 Cal.Rptr. 591].)

A different rule obtains when the demurrer is both general and special and the order ruling thereon is *specific in its terms*. As was said in *Stowe* v. *Fritzie Hotels, Inc., supra,*

---

[11]Defendants Eissler, Cless and Hill filed a joint demurrer. The three remaining defendants filed separate demurrers. Defendant Cross also specified therein that the complaint and each count thereof did not separately state several causes of action.

[12]The judgment filed November 2, 1962, is as follows: ''General demurrers having been interposed to the third amended complaint by defendants St. Joseph's Hospital, Rolf Eissler, Harold A. Hill, Gordon Cless, Glen Cross, and Walter Kolman [*sic*]; the Court having ordered said demurrers sustained with ten days to amend on authority of *Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d [57,] 64 [9 Cal.Rptr. 555]; plaintiff having failed to amend, and chosen to stand on, said third amended complaint: IT IS HEREBY ADJUDGED that the third amended complaint be dismissed and judgment against plaintiff be entered for and on behalf of defendants St. Joseph's Hospital, Rolf Eissler, Harold A. Hill, Gordon Cless, Glen Cross, and Walter Kolman [*sic*].''

44 Cal.2d 416, 425-426: "The pleader should be entitled to rely upon a statement in the order sustaining the demurrer as to the ground upon which it is made. When a demurrer based upon both general and special grounds is sustained and the order mentions only the general ground, impliedly the ruling was made either without consideration of the special grounds or upon a determination that they are not well taken. If the general demurrer was sustained erroneously, the trial judge should be directed to consider the special grounds. (See *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 104 [114 P.2d 1].) Under a contrary rule, the pleader could not profit from the appeal unless he has anticipated the ruling to be made on the special demurrer and amended his pleading to remedy any defects." (See also: *Stewart* v. *Indian Creek Lumber Co.* (1961) 192 Cal.App.2d 93, 97-98 [13 Cal.Rptr. 397] ; *Deming* v. *Drachmann* (1962) 202 Cal.App. 2d 445, 448 [21 Cal.Rptr. 17].)

The rule last mentioned is subject to this further qualification: When a demurrer based upon both general and special grounds is sustained and the order mentions only the general ground, but specifies one of two grounds for general demurrer, the judgment of dismissal must be affirmed if *either* of the two general grounds urged is valid. (*Stowe* v. *Fritzie Hotels, Inc., supra,* 44 Cal.2d 416, 424; *Southall* v. *Security Title Ins. etc. Co.* (1952) 112 Cal.App.2d 321, 323 [246 P.2d 74].)

In the case before us the trial court in apparent compliance with section 472d of the Code of Civil Procedure[13] included in its judgment a statement to the effect that the general demurrers interposed by all defendants were sustained with leave to amend on the authority of *Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57 [9 Cal.Rptr. 555]. (See footnote 12, *ante.*) No mention is made in the judgment or in any order antecedent thereto of the special grounds of demurrer. However, it is to be noted that all demurrers specified two general grounds: (1) failure of the complaint to state facts sufficient to constitute a cause of

---

[13]Code Civ. Proc., § 472d provides: "Whenever a demurrer in any action or proceeding is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer.

"The party against whom a demurrer has been sustained may waive these requirements."

action; and (2) failure of the complaint to state facts sufficient to constitute a cause of action in that each count on its face appears to be barred by the statute of limitations. ■ This second ground must be considered one of general demurrer. (*Anderson* v. *McNally* (1957) 150 Cal.App.2d 778, 783-784 [310 P.2d 975]; 2 Witkin, Cal. Procedure, pp. 1476-1477; 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, pp. 453-458.) ■ The parties appear to agree that the court's order was in effect to sustain the general demurrers on the basis that all counts of the complaint were barred by the statute of limitations.

The instant case is therefore similar to *Southall* v. *Security Title Ins. etc. Co.*, *supra*, 112 Cal.App.2d 321. In *Southall*, as here, the grounds urged on demurrer were the complaint failed to state facts sufficient to constitute a cause of action and that the cause of action was barred by the statute of limitations. The demurrer was sustained on the latter ground. On appeal the court, deeming it unnecessary to determine the question of the statute of limitations, concluded that the demurrer should be sustained on the former ground, stating that "if the demurrer should have been sustained upon any of the grounds urged, the judgment will not be reversed. It is the validity of the court's action in sustaining the demurrer which is here reviewable, and not the court's opinion or statement of reasons for its action." (P. 323.)

■ Plaintiff argues that since the order sustaining the demurrer and also the judgment were based on *Mock* v. *Santa Monica Hospital*, *supra*, 187 Cal.App.2d 57, the judgment can be affirmed only if it is supportable under *Mock*. Plaintiff relies on Code of Civil Procedure section 472d and on the first sentence of that portion of *Stowe* v. *Fritzie Hotels, Inc.*, *supra*, 44 Cal.2d 416, 425 quoted by us above. In the light of the rules which we have already set forth, plaintiff's argument must fail. While section 472d imposes procedural requirements which undoubtedly assist reviewing courts, it prescribes no rule regulating the reviewing process. Nowhere does it provide, as plaintiff would have it, that the order must be tested only according to the reasons given by the trial court. As the court stated in *Southall*, *supra*, it is the validity of the court's *action*, and not of the *reason* for its action, which is reviewable.

Nor is there anything in the *Stowe* case, *supra*, to support plaintiff's claim. The language from *Stowe* on which plaintiff relies does not state and cannot reasonably be construed to

mean that an order sustaining a demurrer can only be upheld if the court's reason or cited authority contained therein is supportable. In *Stowe,* the trial court's order in general terms sustained a general demurrer with leave to amend but made no mention of the special demurrer. The appellate court rejected the argument that the judgment of dismissal should nevertheless be affirmed if the special demurrer were well taken on any ground and announced the rule already set forth above. Thus the language in *Stowe* in which plaintiff seeks support,[14] merely means, in such context, that the pleader therein was entitled to rely on the fact that the court ruled only on the general demurrer and not on the special demurrer.

The question therefore which we face here is not whether or not the judgment of dismissal is supportable under the *Mock* case but whether or not the demurrer may be sustained on either of the general grounds urged below. All parties to the appeal however confine their arguments to the question of the statute of limitations. None of them discuss the other ground of general demurrer specified below. In short, plaintiff argues that the complaint is not barred by the statute of limitations; defendants argue that it is barred.

The settled principles governing the instant problem are summarized by Justice Ford in the *Mock* case, *supra,* 187 Cal.App.2d at pages 63 and 64: "An action by a patient against a physician and surgeon for injuries sustained by the patient by reason of negligent treatment is an action sounding in tort and not upon a contract. The statute of limitations of one year embodied in subdivision 3 of section 340 of the Code of Civil Procedure governs such an action. (*Stafford* v. *Shultz,* 42 Cal.2d 767, 775 [270 P.2d 1]; *Huysman* v. *Kirsch,* 6 Cal.2d 302, 306 [57 P.2d 908]; *Calvin* v. *Thayer,* 150 Cal.App.2d 610, 616, [310 P.2d 59]; *Costa* v. *Regents of University of California,* 116 Cal.App.2d 445, 454 [254 P.2d 85]; *Ehlen* v. *Burrows,* 51 Cal.App.2d 141, 144 [124 P.2d 82].) However, the statute of limitations does not commence to run until the plaintiff discovers his injury or through the exercise of reasonable diligence should have discovered it. (*Stafford* v. *Shultz, supra,* 42 Cal.2d 767, 776; *Hurlimann* v. *Bank of America,* 141 Cal.App.2d 801, 802-803 [297 P.2d 682]; *Hemingway* v. *Waxler,* 128 Cal.App.2d 68,

---

[14]Plaintiff quotes the following sentence: "The pleader should be entitled to rely upon a statement in the order sustaining the demurrer as to the ground upon which it is made." (44 Cal.2d at p. 425.)

70-71 [274 P.2d 699]; *Greninger* v. *Fischer,* 81 Cal.App.2d 549, 553 [184 P.2d 694].) As stated by Mr. Justice White in *Trombley* v. *Kolts,* 29 Cal.App.2d 699, at page 709 [85 P.2d 541]: 'Certainly the statute of limitations should not run against appellant's rights during the time she was in ignorance of the cause of her disability, and could not with reasonable care and diligence ascertain such cause. . . .' More recently, in *Hundley* v. *St. Francis Hospital,* 161 Cal.App.2d 800, it was said, at page 806 [327 P.2d 131]: 'Thus, in the absence of actual discovery of the negligence, the statute does not commence to run during such period (*Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908]), and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered (*Trombley* v. *Kolts,* 29 Cal.App.2d 699 [85 P.2d 541]).' (See also *Myers* v. *Stevenson,* 125 Cal.App.2d 399, 402 [270 P.2d 885].) ▊ Moreover, the statute of limitations with respect to a cause of action for malpractice does not ordinarily commence to run while the physician-patient relationship continues between the defendant physician and the plaintiff (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399, 401), unless the plaintiff has in fact discovered the injury or through the use of reasonable diligence should have discovered it. (See *Petrucci* v. *Heidenreich,* 43 Cal.App.2d 561, 562 [111 P.2d 421]; *Hundley* v. *St. Francis Hospital, supra,* 161 Cal.App. 2d 800, 806.) ''

▊ The one-year statute of limitations is applicable even where, as here, the plaintiff-patient alleges a cause of action for deceit based on the physician's false representations or fraudulent concealment of the nature and extent of the injury. Such a cause of action has always been treated as one for malpractice. (*Tell* v. *Taylor* (1961) 191 Cal.App.2d 266, 271 [12 Cal.Rptr. 648]; *Garlock* v. *Cole* (1962) 199 Cal. App.2d 11, 15 [18 Cal.Rptr. 393].)

The court in *Mock, supra,* quoting from our opinion in *Hurlimann* v. *Bank of America, infra,* further stated: ''In order to show that his cause of action is not barred where the act of the defendant which is alleged to have been negligent occurred more than a year before the commencement of the action, the plaintiff must state in his complaint 'when the discovery was made, the circumstances under which it was made, and facts to show that the plaintiff is not at fault for not having made an earlier discovery, and that he had no actual or presumptive knowledge of facts sufficient to put

him on inquiry. (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d
399; *Wohlgemuth* v. *Meyer, supra,* 139 Cal.App.2d 326, 330-
331 [293 P.2d 816].)' (*Hurlimann* v. *Bank of America,
supra,* 141 Cal.App.2d 801, at p. 803.)" (187 Cal.App.2d at
pp. 64-65.) The rationale of the above rule is the same as
that underlying the pleading of discovery in fraud cases.
 Where in an action like the present one the plaintiff
pleads fraud and concealment to toll the statute of limitations,
the rules of pleading to be applied in determining whether the
plaintiff discovered or should have discovered the facts giv-
ing rise to his cause of action are the same as those applicable
to cases falling within Code of Civil Procedure section 338,
subdivision 4, where fraud is the gravamen of the cause of
action and the same particularity in pleading is required.
(*Lady Washington Consol. Co.* v. *Wood* (1896) 113 Cal. 482,
486-487 [45 P. 809]; *Original Min. & Mill. Co.* v. *Casad*
(1930) 210 Cal. 71, 75 [290 P. 456]; *Kimball* v. *Pacific Gas &
Elec. Co.* (1934) 220 Cal. 203, 215 [30 P.2d 39]; *Sears* v.
*Rule* (1945) 27 Cal.2d 131, 147 [163 P.2d 443]; *Stafford* v.
*Shultz* (1954) 42 Cal.2d 767, 778 [270 P.2d 1]; *Bowman* v.
*McPheeters* (1947) 77 Cal.App.2d 795, 798 [176 P.2d 745].)
 Plaintiff's allegations, summarized by us above,
bearing upon the element of discovery are practically the
same in each count. Although slightly varied in language[15]
these allegations relate to said defendants' wrongful acts
surrounding the performance of the cerebral angiogram.
While these allegations state the date of discovery ("approx-
imately the first of April, 1961") they nowhere state the
*circumstances* under which the discovery was made or any
*facts* from which it could be concluded that plaintiff could not
with reasonable diligence have made the discovery sooner. The
allegation that the discovery was made by plaintiff's coun-
sel is, without more, as palpably inadequate as an allegation
that the discovery was made by plaintiff. Discovery
"is a question of law to be determined by the court from the
*facts* pleaded. As in the case of any other legal conclusion, it
is not sufficient to make a mere averment thereof, ..."
(*Lady Washington Consol. Co.* v. *Wood, supra,* 113 Cal. 482,
486; emphasis added.) The final allegation that

---

[15]In the first, fourth, seventh, eighth, ninth and tenth counts the
allegations relate to the discovery of the falsity of a specified "state-
ment on causation"; in the second and fifth counts to the discovery of
alleged "improper advice"; in the third and sixth counts to the
"falseness" of certain representations.

"[p]laintiff could not reasonably have discovered it earlier" is of course conclusionary and ineffective.

Plaintiff's allegations relating to the discovery that Dr. Cross had performed a spinal tap on him, while somewhat more informative, are still inadequate when measured by the above rules of pleading. As we have pointed out, these allegations found in count one are incorporated in each of the following nine counts. They state in substance that plaintiff did not learn of the spinal tap until it "came out" during the deposition of defendant Cless on November 27, 1961. This was seven months after the filing of the original complaint on April 24, 1961. These allegations show when and under what circumstances such discovery was made. However, as with the allegations purportedly relating to the angiogram, we find no facts alleged showing that plaintiff could not reasonably have made discovery of the spinal tap sooner. The cause of action herein consists of injuries resulting from the performance of *both* a cerebral angiogram and a spinal tap. Plaintiff must satisfy the pleading requirements of discovery in respect to both acts in the operation so that the court can determine under *all* the circumstances of the case whether plaintiff had actual or presumptive knowledge of facts sufficient to put him on inquiry as to the cause of his injury. (*Hurlimann* v. *Bank of America* (1956) 141 Cal.App.2d 801, 803 [297 P.2d 682].)

We conclude therefore that except for the three counts against defendant Kollman (fourth, fifth and sixth counts) which we explain *infra,* the complaint does not satisfy the requirements for pleading discovery of the wrongful act involved. Such act is alleged to have occurred on February 23, 1960. The original complaint was filed on April 24, 1961, more than one year later. With respect to these counts, plaintiff has not pleaded facts sufficient to establish discovery within one year of the latter date and that plaintiff could not reasonably have made an earlier discovery.

As to the fourth, fifth and sixth counts we resolve the problem of discovery on another principle. These three counts are against defendant Kollman who is alleged to have "treated plaintiff continuously from February 23, 1960 to October 20, 1960." In *Myers* v. *Stevenson* (1954) 125 Cal.App.2d 399, 401-402 [270 P.2d 885], the court said: "It has become settled law in California that the statute of limitations for malpractice does not ordinarily commence to run while the physician-patient relationship continues between the defend-

230

ant physician and the plaintiff. The reason for this rule was stated in the land-mark case of *Huysman* v. *Kirsch,* 6 Cal.2d 302, 312 [57 P.2d 908].... The cases uniformly since this decision have followed the rule that while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice he continues to rely.'' (See also *Trombley* v. *Kolts* (1938) 29 Cal.App.2d 699, 709 [85 P.2d 541]; *Petrucci* v. *Heidenreich* (1941) 43 Cal.App.2d 561, 562 [111 P.2d 421].) The original complaint was filed within one year after the physician-patient relationship between plaintiff and Kollman had terminated. The above allegations coupled with the allegation of plaintiff's lack of knowledge of the cause of his injuries during the continuance of such relationship brings the above three counts within the rule set forth in the *Myers* case. We hold that the fourth, fifth and sixth counts were not defective on any theory of discovery and were therefore not barred by the statute.

We turn to plaintiff's contention that the allegations of his insanity were sufficient to toll the statute of limitations. Paragraph III of the first count, incorporated by reference in all remaining counts, alleges that '' [p]laintiff, as a result of the tortious acts of defendants, as set out in this complaint was, continuously from February 23, 1960 to the end of April 1960, insane.'' It is therefore urged that the filing of the original complaint on April 24, 1961, was within the one year period of the statute of limitations.

Section 352 of the Code of Civil Procedure provides in relevant part that '' [i]f a person entitled to bring an action ... be, at the time the cause of action accrued, ... 2. Insane; ...the time of such disability is not a part of the time limited for the commencement of the action.'' Section 357 provides: ''No person can avail himself of a disability, unless it existed when his right of action accrued.''

We think that the plain meaning of the above quoted allegation is that plaintiff was continuously insane during a period commencing on February 23, 1960, and ending approximately on April 30, 1960. The tortious acts complained of occurred on February 23, 1960. Any other interpretation would distort the clear language used. We therefore reject defendants' argument that the word ''from'' excludes the day first mentioned and that accordingly the above allegation means that plaintiff became insane on February *24*. In support of this proposition defendants cite our opinion in *Ziganto*

v. *Taylor* (1961) 198 Cal.App.2d 603 [18 Cal.Rptr. 229]
and also *New York Life Ins. Co.* v. *Bullock* (5th Cir. 1928)
26 F.2d 666. These cases are not applicable here. They in-
volve the rule of computing the time when an act provided
by law (*Ziganto*) or contract (*New York Life Ins. Co.* ) is to
be done. As we held in *Ziganto, supra,* where computation is
"from and after" a given day, such day is excluded. In the
case before us, the word "from" has not been used by the
pleader in the sense of denoting the time within which an act
is to be done but in the sense of specifying a date upon which
a condition, namely plaintiff's insanity, occurred.

However we must still inquire whether the above allegation
which, we say, asserts the occurrence of plaintiff's insanity
on February 23, 1960, also asserts such condition as existing
"at the time the cause of action accrued." (Code Civ. Proc.,
§§ 352, 357.) We think it does. Although the pleader could
have used more precise language, in our view the import of
the allegation is that plaintiff's insanity occurred instantly
and immediately upon the commission of defendants' tor-
tious acts and as a direct result thereof.

"A cause of action does not 'accrue' until the party
owning it is entitled to begin and prosecute an action there-
on. It accrues at the moment when he has a legal right to sue
on it, and not earlier." (*County of Los Angeles* v. *Metropol-
itan Casualty Ins. Co.* (1933) 135 Cal.App. 26, 28 [26 P.2d
699, 27 P.2d 914].) Generally speaking a delictual
cause of action accrues when the wrongful act is done. (*Lat-
tin* v. *Gillette* (1892) 95 Cal. 317, 319 [30 P. 545, 29 Am.St.
Rep. 115].) Where insanity is caused by the wrongful
act or negligence of another and occurs simultaneously with
such act or negligence, it follows that such disability exists at
the time the cause of action accrues and the statute of limita-
tions does not commence to run against the cause of action.
(*Gottesman* v. *Simon* (1959) 169 Cal.App.2d 494 [337 P.2d
906, 77 A.L.R.2d 620] ; *Nebola* v. *Minnesota Iron Co.* (1907)
102 Minn. 89 [112 N.W. 880, 12 Ann. Cas. 56] ; 34 Am.Jur.
163.)

Defendants argue that there is no mention of the
word "immediately" in the subject allegation. Assuming
*arguendo* that the allegation does not assert the occurrence of
the insanity simultaneously with the accrual of the cause of
action, nevertheless it does assert that the insanity occurs on
the same day, to wit, February 23, 1960. In our opinion, the
statute of limitations would still not commence running in

such a situation. While we have found no California case squarely decisive of the point, the better rule in other jurisdictions appears to be the following: Where the condition of insanity results directly from, and occurs on the same day, as the wrongful act or neglect which is the basis of the action, the two events are *legally* simultaneous since the law disregards fractions of days and the statute of limitations will not be deemed to have commenced running prior to the occurrence of the condition of insanity. (*Nebola* v. *Minnesota Iron Co., supra,* 102 Minn. 89 [112 N.W. 880]; *Pannell* v. *Glidewell* (1927) 146 Miss. 565 [111 So. 571]; see 41 A.L.R.2d 726, 730-732; 34 Am.Jur. 163.) In *Nebola, supra,* which involved a statute similar to Code of Civil Procedure section 352, the court said: ''But the statute does not require necessarily that the disability which suspends its operation shall arise or exist at the same moment of time. If such were to be its construction, then persons unfortunately in plaintiff's situation would be deprived of the benefits intended to be conferred upon them; for, as remarked by the learned trial judge, so long as cause precedes effect, it will be technically true that an injury which causes insanity necessarily precedes it, and an appreciable or measurable time will lapse between the two events, though alleged to have been simultaneous. Such a conclusion involves a species of metaphysical reasoning which does not blend well with a practical administration of the law. It ignores an elementary principle that the law takes no notice of fractions of a day, and forces the further conclusion that, where a person vested with a right of action was sane and capable of asserting his rights at the precise moment his cause of action accrued and for the space of 10 minutes thereafter, the statute commenced to run against him, notwithstanding his loss of mind and reason at the expiration of that short time, and continued uninterrupted by the then occurring insanity. ... [B]ut a practical construction of the statute under consideration neither requires nor justifies the measurement of moments or the interval of time elapsing between an injury and an insane condition of mind which results therefrom.'' (Pp. 880-881 [112 N.W.].)

We conclude that the allegation relating to plaintiff's insanity is sufficient and therefore effective to toll the statute of limitations. Since the original complaint was filed on April 24, 1961, and therefore within one year from ''the end of April 1960'' when plaintiff's competency was restored and the statute of limitations commenced running, the third

amended complaint now before us is not barred by the statute. In view of this conclusion, we deem it unnecessary to consider plaintiff's separate contention that the statute was tolled by the absence of each of the individual defendants (excepting of course the hospital) from the state as alleged in the complaint before us.

However we must dispose of several points urged below and now preserved on appeal with respect to some of the counts of the complaint.

 (a) *Count two*: Defendants argue that this count purports to state a cause of action for fraud, misrepresentation and battery; that this cause of action was first stated in plaintiff's *second* amended complaint filed October 6, 1961; that fraud and negligence (the basis of count one) being completely dissimilar, the ámendment adding count two did not relate back to the filing of the original complaint; and that the cause of action therein stated having been commenced on October 6, 1961, it was not commenced within the applicable period of limitations, even assuming that plaintiff was insane until the end of April 1960. Defendants cite *Lambert* v. *McKenzie* (1901) 135 Cal. 100 [67 P. 6]; *Pagett* v. *Indemnity Insurance Co.* (1942) 54 Cal.App.2d 646 [129 P.2d 700]; and *Youngblood* v. *City of Los Angeles* (1958) 160 Cal.App.2d 481 [325 P.2d 587].

Defendants' argument is without merit. As we have already pointed out, count two basically sets forth a cause of action based on battery. In essence it charges that the performance of the cerebral angiogram was in fact unnecessary, that plaintiff would not have consented to it had not Cross improperly advised him, that therefore there was no real consent to the angiogram and that additionally plaintiff never consented to the spinal tap. The obvious purpose of these allegations was to establish unauthorized surgery and thus the commission of a battery. It is settled that an operation performed on a person without his consent constitutes technical assault and battery. (*Valdez* v. *Percy* (1939) 35 Cal.App.2d 485, 491 [96 P.2d 142]; *Hundley* v. *St. Francis Hospital* (1958) 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360].) Count two is not a new and different cause of action but the same cause of action as in count one, expressed under a different legal theory. (See generally 2 Witkin, Cal. Procedure, pp. 986-988.) It therefore relates back to the filing of the original complaint.

(b) *Count three.* As we have stated, this count sets forth a

cause of action on the theory of fraud. Defendants argue that it is defective in the same respects as count two, that it is a new cause of action which does not relate back to the filing of the original complaint and that it is therefore barred by the statute of limitations.

Actually the question raised here is whether or not count three sets forth a wholly distinct and different legal obligation against defendant Cross from that set forth in count one. (*Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318]; *Bar* v. *Carroll* (1954) 128 Cal.App.2d 23, 26-34 [274 P.2d 717]; *Saari* v. *Superior Court* (1960) 178 Cal.App.2d 175, 177-179 [2 Cal.Rptr. 856].)

■ Where an amended complaint, filed after the statute of limitations has run, seeks recovery on the same general set of facts as in the original complaint, it will relate back to and be deemed filed as of the date of the original complaint and a mere change in the legal theory underlying the complaint will not subject the amended complaint to the bar of the statute of limitations. (*Wennerholm* v. *Stanford Univ. School of Medicine* (1942) 20 Cal.2d 713, 718 [128 P.2d 522, 141 A.L.R. 1358].)

■ In the first two counts against defendant Cross the basic facts underlying plaintiff's cause of action are the wrongful invasion of his right to the security of his body by the defendant's act which was either negligent (count one) or intentional (count two). The remaining allegations in said counts, summarized by us above, bears upon defendant's alleged concealment of his act and plaintiff's explanation as to his delay in filing suit. The factual nucleus of each count was the commission of the tortious act, negligent or intentional.

While count three sets forth certain facts, not found in the preceding two counts, which assert in essence the inducement of plaintiff's consent to the operation by false representations on the part of the defendant, these additional facts do not set forth a wholly distinct and different obligation. They do no more than express a change of the legal theory underlying the original complaint. The defendant's act for which plaintiff seeks recovery is the same—the performance of the cerebral angiogram and spinal tap. The primary right for the violation of which he seeks recovery is the same—the wrongful invasion of his body although its statement now appears in terms of fraud. Nevertheless, realistically examined, the allegations relating to defendant's false representations and

plaintiff's reliance thereon are prefatory to the central allegations of the count, namely defendant's performance of the operation and plaintiff's resulting injuries. All three counts against defendant Cross involve the same wrong, the invasion of plaintiff's body by certain acts: count one states that such acts were negligently performed; count two states that they were performed without plaintiff's consent; count three states that they were performed under false representations that they were routine, harmless and necessary.

We conclude that count three, while expressing a change of legal theory, sets forth the same legal obligation against defendant Cross, is therefore deemed filed as of the date of the original complaint on April 24, 1961, and is not, for the reasons here advanced, barred by the statute of limitations. *Wennerholm* v. *Stanford Univ. School of Medicine, supra,* 20 Cal.2d 713; *Frost* v. *Witter* (1901) 132 Cal.421, 427 [64 P. 705, 84 Am.St.Rep. 53].) Defendants cite *Lambert* v. *McKenzie, supra,* 135 Cal. 100 for the proposition that fraud and negligence are so completely dissimilar ''that where a complaint is amended to change from one to the other, for the purposes of the statute of limitations, the amendment does not relate back to the filing of the prior complaint.'' However the holding in *Lambert* is contrary to the more recent ruling of the Supreme Court in *Wennerholm.* In the latter case the court took pains to point out that any contrary intimations contained in *Lambert* ''are inconsistent with the theory of the more recent cases cited above and should not be followed.'' (20 Cal.2d at p. 718.)

(c) *Counts five and six.* As we have already stated, these counts against defendant Kollman contain virtually the same allegations as counts two and three against defendant Cross. Defendants urge the same objections relative to the statute of limitations as those just discussed. They must fail for the same reasons heretofore given.

 Finally, we briefly consider the other ground of general demurrer asserted below, namely, that apart from the question of the statute of limitations, the complaint and each count thereof fails to state facts sufficient to constitute a cause of action. We have pointed out that none of the parties argue this point on appeal. While it is arguable that the parties thus concede the sufficiency of the complaint in this respect, we feel constrained to examine and pass upon such ground of demurrer which strikes at the very heart of the cause of action. As we have said, if the demurrer should have

been sustained on this general ground, we must not reverse the judgment even though the trial court may have considered the complaint good against this ground of general demurrer and erroneously concluded that it was subject to a ground of demurrer raising the statute of limitations. (*Burke* v. *Maguire* (1908) 154 Cal. 456, 461 [98 P. 21]; *Southall* v. *Security Title Ins. etc. Co., supra,* 112 Cal.App.2d 321, 323; *Bank of America* v. *Vannini* (1956) 140 Cal.App.2d 120, 126-127 [295 P.2d 102].)

From our examination of the pleading however we have concluded that the complaint is good against the above-mentioned specification of *general* demurrer. Counts one, four, seven, eight, nine and ten purport to allege a cause of action for negligence (malpractice) against each of the respective defendants. Each of the foregoing counts, except count ten, charges that the respective defendant negligently diagnosed, cared for and treated plaintiff as a result whereof plaintiff suffered injuries. Negligence may be pleaded in general.terms. (*Stephenson* v. *Southern Pacific Co.* (1894) 102 Cal. 143, 147 [34 P. 618, 36 P. 407]; *Dunn* v. *Dufficy* (1924) 194 Cal. 383, 386 [228 P. 1029]; *Ragin* v. *Zimmerman* (1929) 206 Cal. 723, 725 [276 P. 107]; *Rannard* v. *Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149, 156 [157 P.2d 1].)

As the court said in *Rannard* "it should be no more necessary, after the general charge of negligence in the diagnosis, the operation and the subsequent treatment, to detail the specific act or omission upon which plaintiffs rely than it is incumbent upon a plaintiff in an automobile collision case to specify the particular in which the vehicle was negligently operated, such as driving on the wrong side of the road, driving at an excessive speed, or failure to give proper traffic signals." (P. 157.)

While count 10 (against the hospital) alleges that the hospital was negligent in connection with the performance of the cerebral angiogram by virtue of having inadequate equipment and also negligent in obtaining surgical consents from plaintiff, it is nowhere alleged that plaintiff's injuries resulted from such acts of negligence. However, count ten incorporates by reference allegations of counts eight and nine setting forth the negligence of defendants Cless and Hill and alleges that such two defendants were acting as agents of the hospital and within the course and scope of their agency. The hospital is thus charged with the negligence of said two doctors.

Counts two and five are sufficient as against a general demurrer to allege a cause of action for battery against defendants Cross and Kollman, respectively. Both counts allege ·a harmful contact (battery) with the body of plaintiff (the performance of the operation) and the physical injuries resulting therefrom. (See 2 Witkin, Cal. Procedure, p. 1361.) In count five, liability for the battery is charged against Kollman on the basis that Cross, who performed the operation, did so as Kollman's agent.

Counts three and six, which we have already summarized above, sufficiently set forth the elements of actionable fraud. (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 422 [159 P.2d 958].)

We conclude therefore that the complaint before us is good against both grounds of general demurrer specified below. While defendants Kollman, Eissler, Hill and Cless also filed special demurrers, the trial court did not rule thereon. We do not decide that the complaint was not subject to the special demurrers of the above four defendants and the trial court may in its discretion require the clarification of uncertainties and ambiguities alleged to exist in such pleading. (*Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 104 [114 P.2d 1]; *Wennerholm* v. *Stanford Univ. School of Medicine, supra,* 20 Cal.2d 713, 720; *Stowe* v. *Fritzie Hotels, Inc., supra,* 44 Cal.2d 416, 425-426.)

The attempted appeal from the minute order dated September 5, 1962, is dismissed. The judgment is reversed with directions to the trial court to overrule the general demurrers and to rule on the points presented by the special demurrers. Appellant shall recover costs on appeal.

Bray, P. J., and Molinari, J., concurred.