[Civ. No. 12910. Second Dist., Div. Two. Aug. 15, 1941.]

DAN E. SMITH, Respondent, v. DENVER D. COLEMAN et al., Appellants.

Fred O. Reed, Richard L. Kirtland and W. H. Abrams for Appellants.

Paul G. McIver, Burke, Hickson and Burke & Marshall for Respondent.

WOOD, J.—The defendants, who are physicians and surgeons, have appealed from a judgment entered against them in the sum of $6000 in an action in which plaintiff based his complaint upon the malpractice of defendants.

Plaintiff was injured on June 18, 1938, while in the course of his employment by the Utility Trailer Manufacturing Company as a body builder and welder. The injury consisted of a deep laceration nearly encircling the little finger of his left hand, which exposed the tendons, and of a fracture of the proximal phalanx of the little finger, the bone having been broken into five pieces. At the request of the Industrial Indemnity Exchange, the workmen's compensation insurance carrier of plaintiff's employer, plaintiff went immediately to the office of defendant Coleman for treatment. Defendant Smith, who was Coleman's employee, treated plaintiff for shock, gave first aid, took four sutures in the laceration, and bandaged the finger. No X-ray picture of the injured finger was taken at that time and although defendants continued to treat plaintiff they did not X-ray the finger until July 1, 1938, at which time they first discovered that the finger was fractured and that the comminuted fragments of bone were not completely in place, there being some degree of telescoping or fixation of one fragment into the other. Defendants continued to treat plaintiff but made no attempt to reduce the fracture, merely cleansing and bandaging the laceration from time to time until July 11, 1938, when plaintiff was sent to another doctor. After the laceration had healed plaintiff returned to work on August 1, 1938, and continued to perform his duties as a body builder and welder until the time of trial. Although able to work, any attempt to use the little finger was painful and he was unable to use the finger effectively because he had permanently lost the power of extension of that finger. The loss of the power of extension was caused either by the severance or sloughing off of the tendons or by the adhesion of the tendons to the scar tissue. At the time of trial the fracture was almost

completely healed with reasonably good alignment. As a result of a prior accident plaintiff had lost the two middle fingers on his left hand so that at the time of his present injury he had only three fingers on the left hand, the thumb, the index and the little finger.

The testimony concerning the nature of the treatment furnished by defendants is conflicting, as is the testimony relative to the standard of care which should have been observed in caring for such an injury. Since we are called upon to determine the question of the sufficiency of the evidence to support the judgment, we must resolve all conflicts in the evidence in favor of plaintiff and must indulge all reasonable inferences in support of the findings and judgment. (*Hutchinson* v. *California Trust Co.*, 43 Cal. App. (2d) 571 [111 Pac. (2d) 401].) The evidence, when considered in the light of this rule, discloses that defendants' treatment of plaintiff's injury consisted of cleaning and disinfecting the laceration, suturing it and applying bandages and repeating this technique from time to time as long as the treatment continued. Defendants failed to discover that the little finger was fractured until nearly two weeks after they first undertook to care for plaintiff, at which time they first X-rayed the finger. Defendants failed to apply a splint to plaintiff's little finger at any time and made no attempt to reduce the fracture. It was established by the testimony of medical experts that plaintiff's inability to extend his little finger at the time of trial was a permanent condition which was caused by the severance of the tendons or by the adhesion of the tendons to the scar tissue. The severance of the tendons or their adhesion to the scar tissue was caused by an infection or inflammation which was brought about by the presence in the laceration of foreign bodies. Dr. Strayhorn, testifying on behalf of plaintiff, stated that the inflammatory process which resulted in the adhesions "might be caused partly by bruising and by the presence in the soft tissue of comminuted bone, which acts as a foreign body." He stated that extension, which could have been effected by the use of splints, should have been applied to the injury to pull the comminuted particles back into place. Defendant Smith, who stated that on June 18, 1938, the tendons of plaintiff's finger were not severed and were functioning, testified that "nor-

mally, without any infection or inflammation, the function (of the tendons) would have probably been restored.''

It was the duty of defendants to apply to the treatment of plaintiff's finger that degree of care, skill, knowledge and attention ordinarily possessed and exercised by practitioners of the medical profession under similar circumstances in the locality where the treatment was administered. (*Taylor* v. *Fishbaugh,* 26 Cal. App. (2d) 300 [79 Pac. (2d) 174].)

It was established by the testimony of medical experts that in failing to take an X-ray picture of plaintiff's finger when he first appeared for treatment defendants did not employ that degree of care and skill ordinarily possessed and used by physicians and surgeons in good standing practicing in the locality. Defendant Coleman admitted that the use of the X-ray is endorsed in discovering fractures of small bones such as the fracture of plaintiff's little finger. It was also established by expert testimony that one who possessed the degree of care and skill ordinarily used by physicians and surgeons in good standing practicing in that locality would have employed extension to plaintiff's finger by the use of splints in order to reduce the fracture and that the ordinary standard of care of physicians and surgeons practicing in the locality in question required that a splint be applied to a laceration of the type received by plaintiff in order to protect the tendons and prevent any stress or strain upon them.

The record contains sufficient evidence to support the finding by the trial court that defendants were negligent in failing to discover and reduce the fracture and, in addition, that they were negligent in failing to apply a splint to plaintiff's finger in order to protect the tendons. There is also substantial evidence to sustain the finding that such negligence was the proximate cause of plaintiff's permanent loss of the ability to flex his little finger. The court was justified in concluding that the loss of the power of flexion was caused by the severance of the tendons or their adhesion to the scar tissue, which in turn was caused by infection or inflammation, and that the infection or inflammation was caused by the failure to apply a splint to the injured finger. Although it is true that the evidence does not demonstrate conclusively and beyond the possibility of doubt that defendants' negligence was the proximate cause of plaintiff's permanent injury, there is no such requirement in mal-

practice actions, it being sufficient if there is substantial evidence which reasonably supports the judgment. (*Barham* v. *Widing*, 210 Cal. 206 [291 Pac. 173]; *Dimock* v. *Miller*, 202 Cal. 668 [262 Pac. 311].) The record contains such evidence.

As an affirmative defense defendants alleged that on December 12, 1938, plaintiff for valuable consideration executed a complete release for any and all claims which existed at that time and that such release was approved by the Industrial Accident Commission. The action of the trial court in refusing to receive such release in evidence is now assigned as error. The material portions of such release are: " . . . said applicant D. H. Smith does hereby release and forever discharge the said employer Utility Trailer Mfg. Co. and said insurance carrier, Industrial Indemnity Exchange, an Interinsurance Exchange, their officers, agents, employees, or representatives, or surgeons, physicians, acting in their behalf of and from all claims, demands, actions, or causes of action of any kind or nature whatsoever, on account of, or by reason of the injury alleged as aforesaid, and in particular of any and all liability for any claim or claims which the undersigned . . . may have had, or have, or shall hereafter have including those now known or those which may hereafter become known against said employer and/or said insurance carrier under the Workmen's Compensation and Safety Laws of the State of California, on account of the aforesaid alleged injuries." The injuries described in the release are those sustained on June 18, 1938, "occurring in the course of and arising out of his (plaintiff's) employment, which injuries were substantially as follows: Fractured left little finger. . . . " Since the document purports to release physicians and surgeons acting in behalf of the employer or the insurance carrier, defendants claim that it is a bar to the present action.

The trial court did not err in refusing to receive such release in evidence. The release was executed in connection with plaintiff's application to the Industrial Accident Commission to recover compensation for the injury of June 18, 1938, which arose out of his employment. Although broad in its description of the claims affected, the release was expressly limited to plaintiff's claims against his employer and the latter's insurance carrier "on account of, or by reason

of the injury alleged as aforesaid," and was further restricted to claims "under the Workmen's Compensation and Safety Laws." The injury "alleged as aforesaid" was the injury of June 18th. The release, therefore, did not cover expressly or by implication any injury other than the industrial injury of June 18th. ██ If, as contended by defendants, the Industrial Accident Commission had exclusive jurisdiction over claims for the recovery of damages for the malpractice of a physician in the treatment of an industrial injury, it might properly be held that the release was a bar to the present action. However such is not the law. Where recovery is sought by an employee *against his employer or the employer's insurance carrier* for a new or aggravated injury resulting from the negligence of a physician in treating an industrial injury, the Industrial Accident Commission has exclusive jurisdiction to determine the claim. (*Fitzpatrick* v. *Fidelity & Casualty Co. of N. Y.*, 7 Cal. (2d) 230 [60 Pac. (2d) 276]; *Nelson* v. *Associated Indemnity Corp.*, 19 Cal. App. (2d) 564 [66 Pac. (2d) 184].) But where, as in the instant case, recovery for the new or aggravated injury which resulted from the negligence of the physicians who treated plaintiff's industrial injury is sought against the physicians only, and neither the employer nor the latter's insurance carrier is a party, plaintiff may recover in an ordinary civil action for malpractice. (*Smith* v. *Golden State Hospital*, 111 Cal. App. 667 [296 Pac. 127].) ██ The present action is not a claim under the Workmen's Compensation and Safety Laws. The release was effective only as to plaintiff's employer and the insurance carrier and did not bar his action against defendants for the separate and subsequent injury which was caused by defendants' malpractice.

██ Defendants charge that certain remarks of the trial judge made at the conclusion of the trial show bias and prejudice on his part. These remarks were to the effect that defendants, whom the judge referred to as "butchers and bunglers," were either committing perjury or were suffering from a loss of memory; and that Dr. Cass, an expert witness for defendants, "was doing all he could to cover up his professional brethren." In reference to the firm for which plaintiff was employed the judge said: "If the concern were

514

to fail—and if Roosevelt remains in office much longer everybody will fail—then he may be looking for another job.'' The action was tried before the court without a jury and it was the duty of the judge to pass upon the credibility of the witnesses and to determine the facts from the evidence. The judge had the right to announce the mental processes by which he determined the credibility of the witnesses and by which he arrived at his conclusions. A new trial cannot be demanded upon the ground that the judge in exercising this right may have exceeded the bounds of propriety.

Defendants charge that the damages awarded are excessive. The determination of the amount of general damages which will compensate an injured party for injuries suffered involves the exercise of a broad discretion by the trier of facts. It cannot be held that the amount awarded is so disproportionate to the injuries suffered that it ''may be said to shock the conscience'' and justify a reversal of the judgment. (*Wallace* v. *Miller*, 26 Cal. App. (2d) 55 [78 Pac. (2d) 745].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 10, 1941. Houser, J., voted for a hearing.