No. 21259.

GEORGE W. BAYERS, JR. *v.* W.O.W., INC., REVILO INDUS-
TRIES, INC.; WILLIAM C. WILSON; JACK WILSON; PETER
OLIVER; AND ROBERT L. HALL.
(426 P.2d 552)

Decided April 24, 1967.

HYMAN & CREPEAU, for plaintiff in error.

DWIGHT K. SHELLMAN, JR., HOLLAND & HART, HACK-ETHAL & MCNEILL, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties either by name or as they appeared in the trial court wherein plaintiff in error Bayers was the plaintiff and defendants in error were defendants.

Bayers brought an action which in one claim charges William C. Wilson and Jack Wilson with breach of trust and fiduciary duty, alleging that William was Bayers' attorney and that Jack was employed by Bayers as a salesman for an invention — a liquor dispenser; that by reason of the knowledge gained in these capacities of trust and by reason of their employment, the Wilsons were able to and did, in fact, obtain one of Bayers' dispensers and have five copies thereof manufactured, all in breach of their trust and confidential relationship.

Claims against the other defendants arise out of the subsequent joint action of the Wilsons in consort with Oliver and Hall. In a stipulation of facts it was agreed that the Wilsons and Oliver formed W.O.W., Inc. in which Oliver invested $5000 in cash and to which the Wilsons assigned all their right, title and interest in the liquor dispenser as consideration for the stock equally divided among the three. Another fact stip-

ulated to was that the Wilsons represented to Oliver that Jack Wilson was the inventor of the dispenser; and additionally it was stipulated that the Revilo Industries, Inc. was then formed by the Wilsons, with Hall entering the picture and offering as his contribution to the venture customer lists and certain office furniture and fixtures. W.O.W., Inc. and the Wilsons and Oliver then assigned the rights to the liquor dispenser to the new Revilo Industries, Inc. The latter corporation, it is alleged, with the four defendants as officers, was created to market and distribute the dispenser.

While the suit was still pending and had not yet been brought to trial, Bayers made a settlement with Hall, the exact nature of which was not disclosed. Bayers executed and delivered to Hall a document which reads as follows:

"June 11, 1963
"I, George W. Bayers, Jr. have a lawsuit pending in the Courts at Denver, Colorado against Robert L. Hall in the amount of ($50,000) Fifty Thousand Dollars. This suit is the cause of Mr. Hall being an officer of a Corporation that fraudulently purchased the rights to my Automatic Liquor Dispensing of which I am the inventor. This is to inform all concerned that I have completely settled with Mr. Hall and that should I get a Judgement [sic] against him that nothing is oweing [sic] by Mr. Hall to me.

/s/ George W. Bayers
George W. Bayers, Jr.

/s/ Edward M. Breese
Witness."

Subsequently all of the other defendants filed a motion to amend their answer and to make a part thereof the writing executed by Bayers which they denominated a "release"; and simultaneously, in the same motion, requested the court for summary dismissal of Bayers' claim on the ground that Hall had been released and that the document operated to release all of the so-called

joint tort-feasors named in the complaint. The court granted the motion and dismissed Bayers' cause of action. The writ of error in this court by Bayers seeks to reverse the judgment of dismissal.

Presented for our resolution is whether the writing given by Bayers to Hall is a release and whether it is such an agreement as to also release the two Wilsons, Oliver, W.O.W., Inc. and Revilo Industries, Inc.

The instant case at first blush appears to be *Price v. Baker*, 143 Colo. 264, 352 P.2d 90, revisited, and in which *Morris v. Diers*, 134 Colo. 39, 298 P.2d 957, was cited.

In the case at bar, however, we are primarily concerned with whether the particular writing executed by Bayers brings this case within the rule announced by this court in *Price*. We hold it does not. At the outset we note that there is no consideration recited in the writing, and consideration is one of the essential elements in the rule announced in the Morris case and adopted in *Price*. In the motion for summary judgment only the pleadings as amended and a document offered as an exhibit, together with Bayers' deposition were before the court. In spite of the deposition taken of Bayers, no attempt was made to determine from him the nature of the settlement, and whether the claims had been *satisfied* for any consideration.

Aside from the question of consideration, there is still a further question: What was the effect of the writing? It does not release Hall; there was no move on the part of Bayers to dismiss Hall from the law suit, a factor that was quite prevalent in the *Price* case. The instrument, although not expertly drawn, can nevertheless be construed within its four corners plainly to contemplate that any judgment, if obtained at all, would also be obtained against Hall, and if that event occurred it would not be enforced as to him. Such a writing does not operate as a release. See *Gillette Motor Trans-*

*port Company v. Whitfield,* 186 S.W.2d 90, and authorities cited therein.

Moreover, the rule announced in *Price* is not applicable to situations wherein separate wrongs are allegedly committed by respective defendants. In other words, in a factual situation where there is a separate distinct cause of action against an independent wrongdoer, a release of one joined in a cause of action with others will not ordinarily release the separate wrongdoer. This is so because they are not "joint" tort-feasors.

The facts in this case indicate that Hall was allegedly in concert with the Wilsons through a corporate entity engaged in an alleged course of conduct, but this was distinctly disconnected from the original alleged wrong perpetrated by the Wilsons which was long prior to Hall entering into the picture. Both of the Wilsons had a duty to Bayers which — if the allegations of the complaint are established — were separate and distinct. The Wilsons were alleged to be in positions of trust and fiduciary responsibility imposing upon them obligations which, when breached, constituted distinct wrongful acts. No subsequent manuevers by incorporation or other acts engaged in with others for profit can be said to have merged with that which the Wilsons were alleged to have done in the first instance. To point up the separate issues alleged to involve only the Wilsons, we find these best set forth in the pretrial order in which the court determined the facts to be litigated as:

"     *     *     *

"g) Whether or not Defendants Jack Wilson and William C. Wilson were sworn to secrecy by Plaintiff not to reveal the workings and structure of Plaintiff's machine to any one.

"h) Whether or not any wrongdoing on the part of Defendants Jack Wilson and William C. Wilson is imputed to the other named Defendants.

*     *     *

"m) Were the actions of Defendants Jack Wilson and

William C. Wilson in obtaining Plaintiff's liquor dispenser by fraud, breach of confidence or unfair means, if any, done with a willful and wanton disregard for the feelings of Plaintiff to entitle Plaintiff to exemplary damages against said Defendants and in what amount." (It is to be noted here that exemplary damages were only sought against Jack Wilson and William C. Wilson for the alleged breach of the fiduciary relationship.)

In *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876, in a case not similar on its facts but one dealing with the problem of separate wrongs, the California court announced the rule to be that a release of a cause of action against a wrongdoer is not a release of a separate and distinct cause of action against another independent wrongdoer. Cited in that case are: Prosser, *Joint Torts and Several Liability*, 25 Cal. L. Rev. 413, 435; *Wheat v. Carter*, 79 N.H. 150, 106 A. 602; cf. *Smith v. Coleman*, 46 Cal. App.2d 507, 513, 116 P.2d 133; *Wallner v. Barry*, 207 Cal. 465, 473, 279 P.148.

Professor Prosser's article in the California Law Review, *supra*, sheds light on the subject in the following manner. We quote:

"* * * A release to one of two tort-feasors who had acted in concert necessarily released the other, since there was but one cause of action, which was surrendered. But as to independent wrongdoers, not acting in concert, who were liable for the same loss, there seems to be no reason to conclude that a release of one would release the others, except in so far as it was based upon actual satisfaction of the claim.

\* \* \*

"* * * The question is whether, upon the facts, it is possible to say that each defendant is responsible for a separate portion of the loss sustained. The distinction is one between injuries which are capable of being divided, and injuries which are not. If two defendants, struggling for a single gun, succeed in shooting the plaintiff, there is no reasonable basis for dividing the

injury, and the tort is joint. If they shoot him independently, with separate guns, and he dies, the tort is still joint, for death cannot be apportioned. If they merely inflict separate wounds, and he survives, a basis for division exists, no matter how difficult the proof may be, and the torts are several. If two defendants each pollute a stream with oil, it is possible to say that each had interfered to a separate extent with plaintiff's rights in the water, and to attempt some rough apportionment of the damages; it is not possible if the oil is ignited, and burns the plaintiff's barn. Entire liability is imposed only where there is no reasonable alternative."

In the case at bar it would be illogical and inconceivable that settlement with Hall — for whatever part he played in furnishing customer lists to the corporation which was organized to market the alleged "stolen" dispenser — would exonerate the Wilsons if they, in fact, used their positions of trust and confidence to obtain Bayers' invention. Also, for Bayers to be rendered impotent to obtain an order from the court to enjoin the al'eged continued purloining and marketing of the invention he claims to be his, would shock the conscience of the court.

The judgment is reversed and the cause remanded with instructions to reinstate the complaint and to try the action on the issues.

Mr. Chief Justice Moore, Mr. Justice Sutton and Mr. Justice Kelley concur.