Mary CINGORANELLI, Petitioner,

v.

ST. PAUL FIRE AND MARINE INSUR-
ANCE CO., St. Paul Mercury Insurance
Co., and The St. Paul Insurance Compa-
ny, Respondents.

No. 81SC306.

Supreme Court of Colorado,
En Banc.

Feb. 14, 1983.

John P. Hartman, Englewood, for peti-
tioner.

Paul D. Renner, P.C., John R. Rodman,
Denver, for respondents.

J.D. MacFarlane, Atty. Gen., Richard F.
Hennessey, Deputy Atty. Gen., Mary J.
Mullarkey, Sol. Gen., David K. Rees, Asst.
Atty. Gen., Denver, for amici curiae, Atty.
Gen. and Com'r of Ins.

QUINN, Justice.

We granted certiorari to review the deci-
sion of the court of appeals in *Cingoranelli
v. St. Paul Fire & Marine Ins.*, 636 P.2d
1285 (Colo.App.1981), which held, in a case
of first impression, that a general release
executed in favor of a tortfeasor by an
automobile accident victim barred the vic-
tim from pursuing "no fault" personal inju-
ry protection (PIP) claims against a PIP
insurer and precluded the victim from re-
covering PIP benefits retained by the PIP
insurer from the tort settlement proceeds
paid in consideration of the general release.
Because PIP benefits are distinct in both
purpose and effect from tort claims, we
hold that a general release of a tortfeasor
by an automobile accident victim does not
serve to release an insurance carrier from

its PIP obligations in the absence of a specific provision which unequivocally includes PIP claims within the scope of the release instrument. We therefore reverse and remand for further proceedings.

## I.

On April 7, 1975, petitioner Mary Cingoranelli was riding as a passenger in an automobile owned and operated by Mary Mazzacco, who had liability and PIP insurance coverage with St. Paul Insurance Company (St. Paul).[1] Mazzacco's vehicle collided with an automobile driven by Bertha Betonski, who was insured by Travelers Insurance Company (Travelers). Cingoranelli suffered severe injuries in the accident, including the loss of an eye and multiple bone fractures. She required extensive medical care and rehabilitation, and asserted tort claims against Betonski and Mazzacco. In addition, she submitted several PIP claims to St. Paul, and by April of 1976 St. Paul had paid her a total of $13,687.20 in PIP benefits.

On April 13, 1976, Cingoranelli, who was represented by counsel, agreed to settle her tort claim against Betonski for $25,000, the limit of Travelers' liability insurance coverage. Cingoranelli signed a general release which was silent as to St. Paul and any PIP claims. The release provided in pertinent part as follows:

"I, Mary Cingoranelli, ... for the sole consideration of twenty-five thousand dollars ($25,000), to me in hand paid, receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and ... do hereby remise, release, and forever discharge, Bertha Betonski and ... her ... successors and assigns ... and all other persons, firms, and corporations, of and from any and all claims, demands, rights, or causes of action of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to

property, and the consequences thereof, resulting, or to result, from a certain accident which happened on or about the 7th day of April 1975, for which I have claimed the said Bertha Betonski to be legally liable, which liability is hereby expressly denied."

Travelers issued a check for $25,000 payable to Cingoranelli, her attorney, and St. Paul. Out of this amount St. Paul retained $13,687.20 as reimbursement of the PIP benefits previously paid to Cingoranelli.

In August of 1976 a settlement was reached on Cingoranelli's claim against Mazzacco. Cingoranelli received $4,474.88 from St. Paul, the liability insurer of Mazzacco, and executed a second release which, like the former one, did not mention St. Paul or PIP claims. The Mazzacco release stated:

"Mary Cingoranelli [claimant] ... does hereby REMISE, RELEASE AND FOREVER DISCHARGE MARY MAZZOCCO [sic] [,] her agents, and servants, and all other persons, firms, and corporations whomsoever of and from any and all actions, claims and demands whatsoever which Claimant now has or may hereafter have on account of or arising out of the accident, casualty and/or event which happened on or about the 7th day of April, 1975, including those consequences thereof which may hereafter develop as well as those which have already developed or are now apparent.

"As a further consideration of said sum Claimant warrants that no promise or agreement not herein expressed has been made to Claimant; that in executing this Release Claimant is not relying upon any statement or representation made by the party or parties hereby released or said party's or parties' agents, servants or physicians concerning the nature, extent or duration of the injuries and/or damages, or concerning any other thing or matter, but is relying solely upon her own judgment; that the above mentioned sum

1. We use the term "St. Paul" to refer collectively to all the named respondent-defendants, namely, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company and The St. Paul Insurance Company.

is received by Claimant in full settlement and satisfaction of all the aforesaid claims and demands whatsoever; that Claimant is over twenty-one years of age and legally competent to execute this Release; and that before signing and sealing the Release Claimant has fully informed herself of its contents and meaning and has executed it with full knowledge thereof."

Cingoranelli, after executing the releases, continued to submit PIP claims which St. Paul refused to pay. On May 22, 1978, Cingoranelli filed suit against St. Paul in the Denver District Court, seeking to recover not only PIP claims accrued after April 13, 1976, the date of the first release, but also the $13,687.20 which St. Paul had retained from the Travelers settlement proceeds. Cingoranelli also claimed, pursuant to section 10–4–708(1), C.R.S.1973, a statutory entitlement to interest, attorney fees and treble damages due to St. Paul's alleged "willful and wanton failure ... to pay [PIP] benefits when due ...."[2] St. Paul denied liability, claiming that Cingoranelli had released it from all PIP obligations when she executed the general releases in favor of Mazzacco and Betonski.

Trial was to the court. Pursuant to the judge's request, the parties first presented their evidence and arguments relating to the two releases. By way of offer of proof, Cingoranelli presented testimony from an expert witness, an attorney specializing in tort claims, that the settlement value of her tort claims against Betonski and Mazzacco was approximately $100,000. The trial court concluded that both releases constituted a bar to Cingoranelli's suit against St. Paul. Noting that neither release expressly reserved rights against St. Paul for PIP benefits, the court ruled that as a matter of law the release of one tortfeasor operated as a total bar to all claims for PIP·benefits against St. Paul. The court of appeals affirmed, holding that Cingoranelli reserved "no right of action against the St. Paul

companies in either release" and that "[g]eneral releases, such as these, discharge all joint tortfeasors, in addition to those specifically named." *Cingoranelli v. St. Paul Fire & Marine Ins., supra* at 1286. The court of appeals also held that because Cingoranelli executed a general release in favor of Mazzacco, St. Paul's insured, without expressly reserving any right of action against St. Paul for the $13,687.20 retained by it from the Betonski settlement proceeds, her claim against St. Paul for this amount was similarly barred.

## II.

We first examine the effect of a general release upon Cingoranelli's PIP claims accruing after the execution of the releases. Cingoranelli argues that because PIP claims are contractual claims which exist independently of tort liability and arise by operation of the Colorado Auto Accident Reparations Act, section 10–4–701 *et seq.*, C.R.S. 1973 and 1982 Supp., they are not barred by the joint tortfeasor release rule relied upon by the court of appeals. We agree with her argument.

## A.

A release is the relinquishment of a claim to the person against whom the claim is enforceable. *E.g., Trustee Co. v. Bresnahan,* 119 Colo. 311, 203 P.2d 499 (1949). The scope of a release is determined primarily by the intent of the parties as expressed in the release instrument, considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument. *See, e.g., Mills v. Standard Title Ins.,* 195 Colo. 281, 577 P.2d 756 (1978); *Farmers Elevator Co. v. Morgan,* 172 Colo. 545, 474 P.2d 617 (1970); *Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969). For many years the rule in Colorado was that the release of a joint tortfeasor served to release all other joint tortfeasors. *E.g., Price*

---

**2.** Section 10–4–708(1), C.R.S.1973, creates a statutory cause of action for the recovery of past due but unpaid PIP benefits, plus reasonable attorney fees, interest at the rate of 18% per annum and, where nonpayment is due to the willful and wanton conduct of the insurer, permits recovery of "three times the amount of unpaid benefits in controversy in the action."

*v. Baker,* 143 Colo. 264, 352 P.2d 90 (1959); *Morris v. Diers,* 134 Colo. 39, 298 P.2d 957 (1956); *Denver and R.G.R. Co. v. Sullivan,* 21 Colo. 302, 41 P. 501 (1895). This rule stemmed from the common law notion as to the unity of a cause of action. Prosser, *Joint Torts and Several Liability,* 25 Calif. L.Rev. 413 (1937). Under this view, where multiple tortfeasors acted in concert in causing an injury, the act of one became the act of all, with each participant liable for the entire loss sustained by the plaintiff. *Id.* at 418. The surrender of that single cause of action resulted in releasing each joint tortfeasor from liability. W. Prosser, *Handbook on the Law of Torts* § 49 at 301 (4th ed. 1971).

Some Colorado cases expanded the joint tortfeasor release rule to include torts which were independent or successive and did so on the basis that the compensation received for the first release was presumed to include any injuries and damages resulting from the other tort claims. *E.g., Ashley v. Roche,* 163 Colo. 498, 431 P.2d 783 (1967); *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943). In *Cox v. Pearl Investment Co., supra,* we recognized the harshness of this rule, especially where its application was contrary to the manifest intent of the parties. The *Cox* case tempered the rule so as to allow a party to preserve a claim against another "joint" tortfeasor, even though there was only one resulting injury, as long as the intent was specifically set forth in the release instrument.

Colorado case law also has recognized that the common law joint tortfeasor release rule does not operate where there are separate and distinct causes of action against independent wrongdoers, which result in separate wrongs to the claimant. *See Bayers, Jr. v. W.O.W.,* 162 Colo. 391, 426 P.2d 552 (1967); *Sanchez v. George Irvin Chevrolet Co., Inc.,* 31 Colo.App. 320, 502 P.2d 87 (1972). Not only are there no "joint" tortfeasors in such a situation, *Bayers, Jr. v. W.O.W., supra,* but, more important, the independent cause of action originates in a legal source separate from the original tortfeasor's misconduct and involves distinct elements of damages. In contrast to the situation involving joint tortfeasors causing one injury or wrong, there is no reasonable basis to conclude that the settlement of one independent cause of action results in complete satisfaction of the other.

> "[C]auses of action against mere concurrent tortfeasors not acting in concert have always been separate, and their separate character should not be affected by the possibility of joinder for procedural convenience. A surrender of one therefore should not on any logical or reasonable basis discharge the other, except to the extent that there has been full compensation." W. Prosser, *Handbook on the Law of Torts, supra* § 49 at 302.

*See Ash v. Mortenson,* 24 Cal.2d 654, 150 P.2d 876 (1944); *Milwaukee Insurance Company v. Gas Service Company,* 185 Kan. 604, 347 P.2d 394 (1959); *Litts v. Pierce County,* 5 Wash.App. 531, 488 P.2d 785 (1971). Effective July 1, 1977, the joint tortfeasor release rule was abrogated in Colorado in the Uniform Contribution Among Tortfeasors Act.[3]

The releases at issue here were executed by Cingoranelli in April of 1975 and August of 1976, prior to the statutory repeal of the joint tortfeasor release rule. The issue whether, by reason of this rule, the general tort releases executed by Cingoranelli also operated to release her PIP claims against

---

**3.** Colo.Sess.Laws 1977, ch. 195, 13–50.5–101 to 13–50.5–106 at 808–10. Section 13–50.5–105, C.R.S.1973 (1982 Supp.), states as follows:

"(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, whichever is greater; and

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

St. Paul requires a consideration of the nature of her tort and PIP claims in order to determine whether they are sufficiently separate and distinct so that the settlement of one does not result in full compensation for the other.[4]

## B.

Cingoranelli's claims against Betonski and Mazzacco were based entirely on the tort principle of liability that one who causes another's injuries or damages through some form of legal fault, such as negligent or intentional conduct, is liable for the injuries and damages caused by the misconduct. Under this theory of liability Cingoranelli, upon proving her losses were caused by the fault of Betonski or Mazzacco, ordinarily would have the right to recover a money judgment for those losses which, in addition to physical pain and mental suffering, would include reasonable and necessary medical, hospital or similar expenses, any permanent injury or disability, and loss of earnings and impairment of earning capacity. *See, e.g., Van Schaack Co. v. Perkins,* 129 Colo. 567, 272 P.2d 269 (1954). As we later discuss, however, the Colorado Auto Accident Reparations Act (Act) prohibits a tort claimant from recovering in the tort action those losses covered by the Act.

An understanding of the nature of Cingoranelli's PIP claims requires an examination of the purpose and effect of the Act. The basic purpose of the Act is "to avoid inadequate compensation to victims of automobile accidents" by requiring registrants of motor vehicles to procure insurance which provides "benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles." Section 10-4-702, C.R.S.1973. To accomplish this objective the Act requires the insurance agreement to include minimum PIP coverage in prescribed amounts, including, for any single accident victim, $25,000 for medical expenses and a like amount for rehabilitation costs, as well as a prescribed amount for lost services and income. Section 10-4-706, C.R.S.1973.[5] These benefits are payable "without regard to fault," section 10-4-706(1)(b), C.R.S.1973, and extend to the insured, household relatives of the insured, anyone occupying the vehicle with the insured's consent, and pedestrians. Section 10-4-707(1), C.R.S.1973. A PIP claim, therefore, is a direct contractual action against the PIP insurer. Section 10-4-708(1), C.R.S.1973.

In addition to the statutory provisions requiring minimum PIP benefits, the Act limits tort actions and recoveries. Section 10-4-714, C.R.S.1973 and 1982 Supp., provides that a person covered by PIP benefits cannot recover against a person "legally responsible" for the injury, except in certain specified situations where the injuries are particularly serious.[6] Similarly, section

---

4. The question whether Cingoranelli's release of her tort claim against Betonski should have operated as a bar, under the joint tortfeasor release rule, to any *tort* claim against Mazzacco is not before us in this case, and we express no opinion on the issue. We deal here only with the effect of the tort releases on Cingoranelli's PIP claims against St. Paul.

5. PIP benefits are specifically listed in section 10-4-706, C.R.S.1973, as follows: (1) up to $25,000 for reasonable and necessary medical and associated services performed within three years after the accident; (2) up to $25,000 in rehabilitation benefits payable over a period of five years after the accident; (3) up to $125 per week for lost income, payable during a period commencing the day after the accident and not exceeding fifty-two additional weeks; (4) up to $15 per day for essential services "in lieu of those the injured person would have performed without income during the period commencing the day after the accident and not exceeding an additional fifty-two weeks;" and (5) a $1,000 death benefit.

6. Under section 10-4-714, C.R.S.1973 and 1982 Supp., an automobile accident victim, for whom direct benefit coverage is required by the Act, retains a legal cause of action in tort against the person legally responsible for the motor vehicle accident when the accident results in one of the following: death; dismemberment; permanent disability; permanent disfigurement; rehabilitative and medical expenses exceeding $500; loss of earnings extending beyond fifty-two weeks and not compensated by any applicable complying policy; or economic losses in excess of the minimum PIP coverages. Section 10-4-715, C.R.S.1973, preserves tort actions against tortfeasors who do not have a complying insurance policy or who deliberately and intentionally commit a

10-4-713, C.R.S.1973, expressly states that no person eligible for PIP benefits shall have any right to recover such benefits as damages in any action "against an owner, user or operator of a motor vehicle or against any person or organization legally responsible for the acts or omissions of such person."[7] The Act thus preserves tort actions based upon fault only in the more serious cases, primarily those in which the injured party sustains damages in excess of those covered by PIP benefits, and excludes PIP benefits from any tort recovery. *See Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100 (1977) (where threshold requirement for direct action against alleged tortfeasor not satisfied, injured person's exclusive remedy is under the "no fault" Act).

### C.

As a review of the Act makes clear, Cingoranelli's PIP claims against St. Paul were fundamentally distinct in character from her tort claims against Betonski and Mazzacco. As a passenger in Mazzacco's vehicle Cingoranelli stood in the position of an intended beneficiary of a statutory scheme which is calculated to provide compensation for basic losses without regard to fault and in lieu of compensation for these same losses in an independent action in tort.[8] The only similarities between Cingoranelli's tort and PIP claims are coincidental: they both arise from an automobile accident and ultimate financial liability for her PIP claims and her tort claims against Mazzacco rests with one insurer, St. Paul. In all other respects, however, her PIP claims are distinct from her tort claims in both purpose and effect. *See Marquez v. Prudential Property & Casualty Insurance Company,* 620 P.2d 29 (Colo.1980) (legislative history indicates intent of Act is to allow injured party full PIP as well as full tort recovery absent double compensation); *United States v. Criterion Insurance Company,* 198 Colo. 132, 596 P.2d 1203 (1979) (intent of Act is to require PIP insurer to pay all the medical expenses incurred by the insured "irrespective of who might have been the tortfeasor"); *Newton v. Nationwide Mutual,* 197 Colo. 462, 594 P.2d 1042 (1979) (insurance policy allowing insurer to offset PIP benefits against uninsured motorist coverage void as against public policy; comparison of PIP coverage and uninsured motorist coverage discloses that former is payable without regard to fault while latter is conditioned upon claimant establishing that "motorist's fault, normally negligence, caused the collision"); *Longman v. Travelers Insurance Company,* 371 So.2d 533 (Fla. App.1979) (contrasting liability based on fault with insurer's "legal, contractual obligation to its insured to pay medical expenses under the separate and distinct P.I.P. provisions"); *Hughes v. State Farm Mutual Automobile Insurance Company,* 294 So.2d 398 (Fla.App.1974) (contrasting fault based coverage relating to uninsured motorist with "no fault" coverage; the latter obligates the insurer to pay "based upon the facts of injury and expenditures with-

tort, and also preserves "a tort action arising out of product liability or product defect."

**7.** At the time of the events at issue here, section 10-4-713(1), C.R.S.1973, granted the insurer "a direct cause of action against an alleged tort-feasor to the extent of benefits paid in excess of five hundred dollars and limited to the liability coverage of the alleged tort-feasor." This exception was eliminated in 1979. Section 10-4-713(1), C.R.S.1973 (1982 Supp.), now provides, in pertinent part:

"[A]n insurer paying [PIP] benefits ... to or for any one person for whose injuries legal liability exists or may exist on the part of a third person who is not an insured under a policy of automobile liability insurance issued by an insurer licensed to write automo-

bile liability insurance in this state shall have a direct cause of action against an alleged tort-feasor to only the extent of the alleged tort-feasor's insurance coverage in excess of reasonable compensation paid to the injured person for such person's injury or damage by the alleged tort-feasor's insurer when the injured person could recover in tort pursuant to section 10-4-714."

**8.** Viewing the accident victim to whom PIP benefits are payable as a third party beneficiary of the PIP insuring agreement is consistent with section 10-4-708(1), C.R.S.1973, which creates a right in the person entitled to PIP benefits to bring an action "in contract" against the insurer to recover benefits due and unpaid.

out regard to fault"); *Allstate Insurance Company v. Ivie,* 606 P.2d 1197 (Utah 1980) (PIP insurer not entitled to subrogation from tort settlement, as tort recoveries are separate and do not include amounts insured under PIP provisions); *Nationwide Mutual Insurance Company v. Kelleher,* 22 Wash.App. 712, 591 P.2d 859 (1979) (passenger injured in single automobile accident entitled to recover up to policy limits under both liability and PIP portions of the insurer's policy, as they are separate and distinct coverages); *Thiringer v. American Motors Insurance Company,* 91 Wash.2d 215, 588 P.2d 191 (1978) (because liability and PIP coverages are separate and distinct, injured insured entitled to first apply tort liability recovery to expenses not covered by· PIP).

These differences between Cingoranelli's tort and PIP claims are so basic as to remove the latter claims from the scope of the common law rule whereby the release of one joint tortfeasor released all other joint tortfeasors and any and all claims which the injured party had against them. The original rationale for the general release rule—that there is only one cause of action—is clearly not applicable to PIP claims, which give rise to a separate cause of action in contract. Furthermore, even under an expansive application of the joint tortfeasor release rule to encompass concurrent or successive wrongs, the rule cannot operate to bar Cingoranelli's PIP claims in this case. Not only do PIP claims constitute a separate cause of action in contract, but, more important, the Act itself dispels any notion that the settlement of a tort claim arising from an automobile accident represents full compensation for PIP claims. By statute any person eligible for PIP benefits cannot maintain an action in tort against the person legally responsible for the injury unless the threshold requirements for damages are established, section 10–4–714(1), C.R.S.1973; and when a tort action can be maintained, tort recovery excludes losses required to be paid under PIP coverage, section 10–4–713(1), C.R.S.1973 (1982 Supp.). Given the statutory scheme, it is simply unreasonable to assume that an automobile accident victim executing a general tort release intends thereby to release PIP claims that are unrelated to the fault principles of tort liability. Rather, the presumed intention in such a case would be to preserve PIP claims, since the losses underlying these claims are not compensable in a tort action and, therefore, would not constitute part of any judgment that might subsequently be satisfied in that action. Finally, to hold that one may inadvertently forego his or her right to PIP benefits merely because the PIP claims were not expressly reserved in the release would hardly advance the expressed legislative intent of avoiding "inadequate compensation to victims of automobile accidents." Section 10–4–702, C.R.S.1973. We therefore hold that an automobile accident victim's general release of a tortfeasor, in the absence of a specific provision which unequivocally includes PIP claims within the terms of the release, does not operate to release an automobile insurer from its obligation to pay PIP benefits to the injured victim. *Longman v. Travelers Insurance Company, supra; see* Laugesen, *Insurance Law,* 1980 Annual Survey of Colorado Law 167, 173–74 (1981). Since the releases executed by Cingoranelli did not expressly refer to PIP claims, the court of appeals erred in holding that St. Paul had been released and discharged of its obligation to honor Cingoranelli's claims for PIP benefits.[9]

### III.

We turn to Cingoranelli's claim for the $13,687.20 which St. Paul retained from the Travelers proceeds paid by virtue of Cingoranelli's settlement of her tort claim against Betonski. Cingoranelli asserts that the retention by St. Paul of $13,687.20 as reim-

**9.** Obviously, we neither hold nor imply that PIP claims can never be released. On the contrary, a release which specifically and unequivocally states that the PIP carrier is released of any and all PIP claims will operate as an effective release of these claims. In the absence of such an express provision, however, the mere execution of a general release in favor of a tortfeasor does not operate to release the accident victim's PIP claims.

bursement for PIP benefits results in an inadequate compensation to her for her injuries, in violation of the Act. Because the court of appeals held that the general release executed by Cingoranelli in favor of Mazzacco, St. Paul's insured, reserved no right of action against St. Paul, it found it unnecessary to address whether St. Paul properly could have demanded reimbursement from the Travelers proceeds for PIP claims already paid to Cingoranelli. The Mazzacco release, however, was silent as to Cingoranelli's claim against St. Paul for the PIP benefits retained by it and, for reasons previously noted in Part II of our opinion, cannot be construed as a release of Cingoranelli's claim for this money.

The question of Cingoranelli's entitlement to these funds will necessarily arise upon retrial, and, in this respect, we call attention to our decision in *Marquez v. Prudential Property and Casualty Insurance Company, supra.* In *Marquez* we concluded that the legislative history of the Act "indicates a legislative intent to allow an insured full tort recovery undiminished by the subrogation and arbitration right of [her] insurer, except in those cases where such a policy would result in double recovery to the insured." *Id.* at 31. Cingoranelli offered evidence which placed the settlement value of her tort claims at approximately $100,000. This proffered evidence indicates that Cingoranelli would not receive double compensation for losses even if she was to receive all of the PIP benefits mandated by statute. If the trial court finds this evidence sufficiently persuasive, then it should award Cingoranelli the amount St. Paul obtained from the Travelers settlement.[10] *See Marquez v. Prudential Property and Casualty Insurance Company, supra; Allstate Insurance Company v. Ivie, supra; Nationwide Mutual Insurance Company v. Kelleher, supra; Thiringer v. American Motors Insurance Company, supra.*

The judgment is reversed and the cause is remanded to the court of appeals with di-

rections to return the case to the trial court for further proceedings consistent with the views expressed herein.

ERICKSON, J., does not participate.

---

**10.** We express no opinion on the ultimate merits of Cingoranelli's claim to the $13,687.20, or to her claims for treble damages, interest, and attorney fees under section 10–4–708(1), C.R.S. 1973.