In re FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., Frontier Holdings, Inc., Debtors.

Brian M. FREEMAN, Brian M. Freeman & Co., Inc., Brian M. Freeman & Co. Investments, Inc., Appellants.

v.

FRONTIER AIRLINES, INC., Frontier Leaseco One, Inc., Frontier Leaseco Two, Inc., Frontier Holdings, Inc., Appellees.

Bankruptcy No. 86–B–8021–E.
Civ. A. No. 88–M–1747.

United States District Court, D. Colorado.

July 11, 1990.

**252**

Donald P. MacDonald, Hornbein, MacDonald, Fattor & Hobbs, Denver, Colo., Jay D. Roth, Christopher D. Cameron, Taylor, Roth, Bush & Geffner, Burbank, Cal., for appellants.

Jay John Schnell, Jay John Schnell, P.C., Denver, Colo., for appellees.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Brian M. Freeman, Brian M. Freeman & Co., Inc., and Brian M. Freeman and Co. Investments, Inc. (Freeman) appeal an order of the bankruptcy court granting the debtors' motion for summary judgment and disallowing the First Amended Proof of Claim (the claim) filed by Freeman. The bankruptcy court concluded that Freeman's claim was barred by a settlement agreement which resulted in the dismissal, with prejudice, of a prior lawsuit, Civil Action No. 85–1989.

Freeman's claim is for services rendered and expenses incurred pursuant to a letter agreement, dated December 21, 1984, among claimants, Frontier Holdings, Inc. (Frontier), and five labor organizations. Generally, Freeman agreed to advise and assist in developing and implementing an employee buy-out plan. The letter agreement set out Freeman's compensation in four paragraphs, numbered 4–7. Paragraphs 4 and 5 provided for payment to Freeman (regardless of whether an employee buy-out plan was actually implemented) of $100,000 upon execution of the agreement, $25,000 each month beginning on January 31, 1985 up to an aggregate of $100,000, unless the agreement was terminated prior to January 15, 1985, and reimbursement for expenses up to a maximum of $40,000. In addition, paragraphs 6 and 7 of the letter agreement stated, "For ad-

visory services to be provided by Freeman with respect to implementing any [employee buy-out] Plan, and conditioned on the execution and closing of such a Plan," Freeman was to receive from Frontier: (a) a specified sum of money, plus an annual fee for five years after the closing of the transaction based on a percentage of future profits (not exceeding $800,000), and (b) an option to purchase 75,000 shares of the common stock of Frontier.

Paragraph 10 of that agreement provided as follows:

> This agreement may be terminated at any time by Freeman, by the Coalition (if they pay all fees paid or due) or by Frontier. Termination of this Agreement shall require the terminating party to give ten (10) days prior written notice. If this Agreement is so terminated, Freeman shall be entitled to any payments to which he would otherwise be entitled pursuant to the terms of this Agreement.

Frontier sent a letter to Freeman, dated January 11, 1985, giving notice that Frontier was terminating the agreement. In August, 1985, Freeman filed Civil Action No. 85–1989, asserting claims against Frontier Holdings, Inc., Frontier Airlines, Inc., and M. Gerald O'Neill, for breach of contract, breach of the covenant of good faith and fair dealing, and *quantum meruit.* The parties signed a Settlement Agreement and Release, dated September 20, 1985, providing for payment of $115,000 to Freeman and the exchange of mutual releases. In paragraph 3, Freeman released

> ... any and all claims, demands, actions, or causes of action, whether in law or in equity, that [Freeman] may now possess, including those for breach of contract, breach of the covenant of good faith and fair dealing, in quantum meruit relief, and tortious interference with contractual relations ...

Paragraph 6 of the settlement agreement provided that:

> Each of the parties, by executing this instrument and by paying and receiving the consideration that this instrument calls for, intends this instrument to be effective as a full and final accord and

satisfaction and release. To further this intention, the Parties acknowledge and agree that this Release does not extend to claims that Freeman, Frontier, or O'Neil do not know or suspect to exist in their favor at the time they execute this Release or that may arise in the future, which claims, if they had known them, would have materially affected this Settlement.

Pursuant to the settlement agreement, the 1985 suit was dismissed with prejudice.

Freeman's bankruptcy claim for $1,250,-000 alleges entitlement to $800,000, pursuant to paragraph 6(b) of the letter agreement, for services that contributed to a "plan" as described in the letter agreement, and $450,000, the alleged value of the option to buy 75,000 shares of Frontier stock described in paragraph 7 of the agreement. Freeman alleges that he negotiated employee wage concessions, which led to the sale of Frontier to People Express in November, 1985. Because this sale occurred after he sued Frontier in August, 1985, Freeman alleges that it is not barred by the 1985 suit.

The bankruptcy court determined that the settlement agreement released these claims. The court held that Freeman's second claim for relief in the complaint, breach of the covenant of good faith and fair dealing, was, in "essence ... a claim based on anticipatory breach of contract." Order, at 9. Accordingly, the bankruptcy court held that Freeman's $1,250,000 claim, arising out of the Freeman-facilitated sale to People Express, existed at the time of the 1985 action and settlement, and, consequently, did not come within the language of paragraph 6 of the settlement agreement, which preserved all claims that the parties "do not know or suspect to exist in their favor at the time they execute this Release or that may arise in the future."

The bankruptcy court reasoned that the second claim for relief set out a claim for anticipatory breach of paragraphs 6 and 7, in that it asked for damages in the amount of $1,000,000, which exceeded the amount recoverable for a breach of paragraphs 4 and 5. The maximum amount recoverable

in a suit brought solely under paragraphs 4 and 5 of the letter agreement would have been $100,000. Based on the requested relief, the bankruptcy court concluded that the complaint necessarily sought damages for the breach of paragraphs 6 and 7, which entitled Freeman to $800,000 and stock options. Further, the bankruptcy court held that the first claim for relief, for breach of contract, covered the breach of paragraphs 4 and 5, and that, logically, the second claim must have been for something other than a breach of those same provisions.

In rejecting Freeman's argument that there was no existing claim for additional compensation under paragraphs 6 and 7 of the letter agreement at the time of the settlement agreement, the bankruptcy court held that uncertainty as to the amount of damages did not prevent prosecution of a claim for anticipatory breach of contract. Order, at 11 (citing *Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087 (1976) and *Westesen v. Olathe State Bank*, 75 Colo. 340, 225 P. 837 (1924)). In conclusion, the bankruptcy court observed that, when Freeman believed that Frontier had breached the letter agreement, he "could either have sued for the anticipatory breach of the contract or he could have waited until such time as the condition occurred and then brought suit. It is this Court's opinion that Freeman chose the former course." *Id.* at 11–12.

■ The scope of the settlement agreement is determined by the language of the document itself, read in light of the underlying pleadings. *Cingoranelli v. St. Paul Fire & Marine Ins. Co.*, 658 P.2d 863 (Colo.1983). The bankruptcy court's interpretation of that language is reviewable *de novo. See Florom v. Elliott Mfg.*, 867 F.2d 570, 575 (10th Cir.1989) (interpretation of unambiguous contract presents question of law). The bankruptcy court's interpretation of the settlement agreement is correct.

■ Although the bankruptcy court did not address the case in terms of res judicata, analysis under that doctrine yields the same result. By discussing the 1985 suit in terms of anticipatory breach, the bankrupt-

cy court recognized that Frontier's termination of the agreement gave rise to one cause of action for breach of contract. When Freeman brought the action in 1985, he was required to bring all of his claims which were ripe at that time.

It is clear that the Frontier letter of January 11, 1985 was an exercise of the right of termination granted by paragraph 10 of the letter agreement. If Frontier exercised that right wrongfully, its conduct gave rise to a cause of action which could be characterized as a breach of the implied covenant of good faith and fair dealing or as a repudiation and anticipatory breach of its contract obligations. Regardless of the legal theory articulated in the complaint, Freeman elected to litigate his rights under the letter agreement by initiating Civil Action No. 89–1989 in this court. That civil action was dismissed *with prejudice* by stipulation of the parties. That order of dismissal was a final adjudication of any rights Freeman had arising out of the termination of the contract and bars the claims asserted in the First Amended Proof of Claim. To hold otherwise would permit splitting a cause of action and would deny any effect to the termination clause in the letter agreement.

Upon the foregoing, it is

ORDERED, that the order of the bankruptcy court disallowing Freeman's First Amended Proof of Claim, is affirmed.